PONGETTI *v.* SPRAGGINS.

Nov. 17, 1952

No. 38507          8 Adv. S. 14          61 So. 2d 158

*Roberson, Luckett & Roberson,* for appellant.

*Brewer & Brewer,* for appellee.

*Roberson, Luckett & Roberson,* in reply.

Kyle, J.

This is an action for damages alleged to have been sustained by the plaintiff, J. V. Pongetti, when his automobile, which was being driven by the plaintiff on U. S. Highway No. 61 a few miles north of Clarksdale, collided with a calf owned by the defendant, C. A. Spraggins. At the conclusion of the testimony the court granted a peremptory instruction for the defendant, and judgment was entered in favor of the defendant. From that judgment the plaintiff prosecutes this appeal.

The facts proved upon the hearing are simple and un-disputed. The accident occurred on the night of September 9, 1951, about 10:30 o'clock, as the plaintiff was proceeding in a southerly direction on U. S. Highway No. 61, in Coahoma County, en route from Memphis to his home in Shelby, Mississippi. The plaintiff testified that he was driving his automobile at a rate of speed between 55 and 60 miles per hour; that the automobile was in good mechanical condition; that its lights were burning; and that its brakes were working; that when his automobile reached a point about ten feet from the place of impact, the defendant's calf dashed into the highway from the west and into the path of the approaching automobile; that the plaintiff did not see the calf before it entered upon the highway; and that it was impossible for him to avoid running into it. It was admitted in the pleadings that the calf was owned by the defendant and that it was alone and unattended. The calf weighed between 250 and 300 pounds.

The defendant owned and operated a cattle auction barn which was located on the east side of the highway and faced westwardly. The defendant bought and sold cattle and auctioned off cattle under the trade name of "The North Mississippi Commission Company." The defendant's barn was built of rough oak lumber. Its walls and all inside pens were 5 feet high; its gates were equipped with half-inch iron pipes which were bolted together when the gates were closed. The gate at the front of the barn was kept locked with a lock that could be opened only with a key kept in the office. The lot on which the barn was located was surrounded by a board fence 5 or 5½ feet high. The spacing between the boards on the fence was graduated from 1 inch at the bottom to 6 inches at the top. The barn and all gates and fences were in good condition at the time the accident occurred. The accident occurred at a point on the highway about one-half mile south of the barn.

The defendant had purchased only a day or two prior to the date of the accident a group of 20 calves, including the calf involved in the accident; and at the time of the accident the defendant had on hand approximately 35 head of cattle at the barn.

The defendant testified that late in the afternoon of the day on which the accident occurred the defendant fed and watered the cattle, counted them, and then checked all the gates to see that they were locked; that he found that all of the gates were locked, and all of the cattle were accounted for. The defendant testified further that after the accident had occurred, about 10:30 p. m., he went back to the barn and again checked the gates and found them locked; that the barn and all gates were closed and that no part of the fence was broken; and that none of the other calves were missing.

The only allegation of negligence contained in the plaintiff's declaration is that "The collision resulted from the negligence of the defendant in permitting the calf to run at large on said highway in violation of the statutes of Mississippi." The defendant admitted in his answer that the calf involved in the accident was the defendant's calf; but the defendant stated in his answer that the defendant did not know that the calf was on the highway. The defendant alleged in his answer that he was guilty of no negligence, and the defendant denied that he had permitted the calf to run at large on the highway, or that he had violated any of the statutes of the State of Mississippi.

The plaintiff's action is based upon Chapter 200, Laws of 1948, Section 4876.5, Code of 1942, and the questions presented for our decision must be determined from the provisions of that act.

It was agreed that U. S. Highway No. 61 is a highway which is maintained by the State Highway Commission; that Coahoma County is under the State Livestock Law;

and that Chapter 200 of the Laws of 1948, Section 4876.5, Code of 1942, is in full force and effect in that county.

The appellant's attorneys in their brief contend that the appellee was under a duty imposed by the above mentioned statute to restrain his calf from running at large on the highway; that he owed such duty to the appellant as a member of the traveling public; that he breached that duty through some act of negligence, and that such breach was the proximate cause of the collision which resulted in the appellant's automobile being damaged; and that the appellee is therefore liable to the appellant in a civil action for the damages sustained by the appellant as a result of the collision. The appellant offered no proof to show that the calf was at large on the highway with the permission or the knowledge of the appellee, or that the appellee had failed to exercise reasonable care to restrain the animal from being at large on the highway. But the appellant's attorneys contend that the doctrine of res ipsa loquitur should be applied in a case of this kind, and that proof of the fact that the appellee's calf was on the highway gives rise to an inference of negligence, and that the jury should have been permitted to say whether the appellee's explanation was sufficient to exculpate him from the charge of negligence.

"The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or, as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care." 38 Am. Jur. 989, Negligence, par. 295.

By the common law of England, an owner of cattle was bound to prevent them from entering upon the premises of another; he was required to fence his cattle in and keep them off any neighboring range or common. But in the early case of Vicksburg & Jackson R. Co. v. Patton, 31 Miss. 156, 66 Am. Dec. 552, it was held that such common law rule did not prevail in this state and that an owner of cattle may rightfully suffer his animals to go at large for pasture upon the neighboring range.

The Mississippi rule was spelled out in New Orleans, J. & G. N. R. Co. v. Field, 46 Miss. 573, wherein it was said: "It is now well established by authority and reason in this state, that uninclosed lands, although private property, are a quasi common, or, as expressed in local parlance, a 'range,' in which the owners of cattle, and domestic animals generally, may permit them to go out at large and depasture without thereby incurring any responsibility as trespassers. **(Hn 1)** The common law principle, which required the owner to confine his stock on his own premises and made him a wrongdoer if they escaped into the lands of his neighbor, never obtained in this state. But the converse is the rule; that each occupant of lands must secure his fields by strong and sufficient enclosures against the intrusion of animals; and that the owner cannot be held as a trespasser for their entering a close unless they have broken a fence deemed in law sufficient to exclude them. Uninclosed lands in this state are held subject to this right or easement."

In Chicago, St. L. & N. O. R. Co. v. Jones, 59 Miss. 465, the Court said: " . . . The owner of cattle or horses has the right, even in an incorporated town to depasture them upon the commons, in the absence of any local legislation prohibiting it, and is not guilty of negligence in doing so."

By the enactment of Section 1 of Article 6, Chapter 12, Hutchinson's Code, 1798 to 1848, the Legislature provided that if any cattle or other livestock should break

into any grounds enclosed with a lawful fence the owner of such livestock should be liable to make reparation to the injured party for the amount of the damage sustained on account of the trespass. That early statute was the forerunner of the stock law now embraced in Sections 4864 to 4876, Code of 1942.

Section 4864, Code of 1942, expressly provides that any person owning or having under his control any livestock, as defined therein, "shall not permit such livestock to run at large upon the open or unfenced lands of another person, except as herein expressly provided, but shall keep such livestock confined in a safe enclosure or upon lands belonging to such person." Section 4871, Code of 1942, provides that every such owner of livestock "shall be liable for damages for all injuries and trespasses committed by such animals by breaking and entering into or upon the lands, grounds, or premises of another person; and the person injured shall have a lien upon the animal, or animals, trespassing for all such damage." Under the above mentioned sections of the Code this Court, in the case of Minor v. Dockery, 125 Miss. 727, 88 So. 321, held that the owner of trespassing stock is absolutely liable for damages done by them to the crops of others, and that questions of due care and negligence on the part of the owner in confining such stock are eliminated.

Chapter 200, Laws of 1948, provides that "it shall be unlawful for any person owning or having under control any livestock to permit such livestock to run at large on the highways or highway rights of way of this state maintained by the state highway commission, except as provided in Section 4 herein."

It is clear that the purpose which the legislature had in mind in the enactment of the above mentioned statute was to protect the traveling public from the hazards resulting from livestock running at large on the highways, and that purpose was to be accomplished (a) by

making it unlawful for any person owning or having under his control any livestock to permit such livestock to run at large on the highway, and (b) by authorizing any highway patrolman or other peace officer, who discovers any such animals running at large on the highway, to take up such animals and deal with them as estrays. The statute contains no provisions similar to those of Section 4871 of the Code of 1942. The statute imposes no criminal liability upon the owner for permitting his livestock to run at large on the highway. **(Hn 2)** The statute does not expressly impose any civil liability upon the owner for damages to persons or property caused by such livestock being at large on the highway. The statute does not make proof of the fact that the animal was at large on the highway prima facie evidence of negligence on the part of the owner, or prima facie evidence that the owner knowingly permitted such animal to run at large on the highway.

The plaintiff's cause of action is necessarily predicated upon the theory of negligence. The declaration simply alleges that ''the collision resulted from the negligence of the defendant in permitting the calf to run at large on the highway'' in violation of the statute. But no facts were proved which tended to support the general allegation of negligence other than the fact that the calf was at large on the highway; and the defendant's testimony, which was neither disputed nor discredited, showed that the defendant had used all proper means to prevent the animal from escaping and that the animal was on the highway without fault on the part of the owner or keeper. Yet the appellant's attorneys say that the question whether the appellee was negligent in permitting his calf to be at large on the highway was a question for the jury to determine.

The only case in which the question of the owner's liability for damages in an action of this kind has been considered by our own Court is the case of Chamberlain

et al. v. Lindsey, 163 Miss. 183, 139 So. 812, which was an action for damages for personal injury inflicted upon a child by a horse belonging to the appellants which was running at large in the Town of Houston, in violation of a municipal ordinance; and the Court in affirming a judgment for the plaintiff in that case said: ''We are not here called on to decide whether an animal, under such ordinances, must be at large by the consent, or because of the negligence, of its owner, in order for the owner to be liable for an injury inflicted by it, for the reason that the evidence here discloses, without conflict, that the horse was at large because of the negligence of the person who, for the time being, was discharging the appellants' duty of confining it.''

The question of the owner's liability under statutes similar to our own has been considered, however, by the courts of other states, and there is a sharp conflict in the decisions rendered by the courts in such cases. This conflict is summarized in 3 C. J. S., p. 1254, Animals, par. 149 b, as follows:

''Under statutes forbidding the owner of specified domestic animals to permit them to run at large, he is liable for injuries caused by an animal of the class named which was unlawfully at large either if he knowingly permits it so to roam or fails to exercise ordinary care in restraining it.

''Some courts hold further that he is liable without proof of negligence on his part and whether or not he knew the animal had escaped, negligence in such case being presumed from the fact that it was at large.

''In some jurisdictions, however, it is held that the owner is liable under such a statute only where he negligently or intentionally permits the animal to run at large, and under this view there can be no recovery where he has exercised the care of a prudent man in restraining it or where the animal was at large without his fault and he diligently pursued it.''

After a careful study of the provisions of our own statute we have concluded that we should align ourselves with those courts which hold that **(Hn 3)** the owner of an animal is liable for damages in a case of this kind only when he negligently or intentionally permits the animal to run at large on the highway; and, under this view, as indicated above, there can be no recovery in a case of this kind where the plaintiff shows no negligence on the part of the owner of the animal and where the owner shows, as he did in this case, that he has exercised reasonable care to restrain the animal and has been guilty of no negligence which contributed to the escape, or that the animal was at large without his fault.

In arriving at this conclusion we have been influenced to some extent by the fact that the legislature, in enacting the 1948 statute, did not see fit to incorporate in the statute a provision similar to that contained in Section 4871, Code of 1942, which would have made the owner liable for damages even though no negligence was shown. We also think that the use of the words, "to permit such livestock to run at large," as those words are used in the 1948 statute, implies an intent that there must be knowledge, consent or willingness on the part of the owner, or such negligent conduct as is equivalent thereto, to render the owner liable for damages in a case of this kind. This interpretation of the statute finds support in the statement of the text writer in 3 C. J. S., p. 1231, Animals, par. 131, where it is said:

"The meaning of the words 'running at large' differs in different statutes, and should always be determined largely from the objects and purposes sought to be accomplished by the particular statute wherein they are used. There is a distinction to be noted between a statute attaching a penalty to 'permitting animals to run at large' and one making it the duty of some municipal official to take up an animal 'found running at large.' A statute of the first class implies knowledge, consent, or willingness

on the part of the owner that the anmial be at large, or such negligent conduct as is equivalent thereto, but does not comprehend a case where, through some untoward circumstance, the owner is unable to watch and care for the animal in a particular instance, or where, notwithstanding the owner has taken precautions to restrain them, and is without fault or negligence, the animals escape from him, and he makes immediate and suitable efforts to recover them, or where the animals have been driven from the lands of their owner by a wrongdoer. The rule is otherwise, of course, if animals are at large through the negligence of the owner, or of his servants, or are permitted to go at large after knowledge of their escape.''

In the case of Gardner v. Black (1940), 217 N. C. 573, 9 S. E. 2d 10, an action was brought by the plaintiff against the defendant for personal and property damages sustained by the plaintiff as a result of a collision between the plaintiff's automobile and a mule owned by the defendant. The defendant filed a counterclaim. The plaintiff recovered a judgment for $100 and the defendant appealed. The statute upon which the plaintiff relied provided that ''If any person shall allow his livestock to run at large within the limits of any county, township or district in which a stock law prevails or shall prevail pursuant to law, he shall be guilty of a misdemeanor, and fined not exceeding fifty dollars or imprisoned not exceeding thirty days.'' The Court held that the doctrine of res ipsa loquitur did not apply, and the Court in its opinion said: ''The evidence for plaintiff fails to show that the mules of defendant were at large with his knowledge and consent, or at his will, or that their escape was due to any negligence on his part.'' And the Court reversed the judgment of the lower court.

In the case that we now have before us the plaintiff offered no proof to show that the defendant's calf was at large on the highway with the defendant's knowledge or

consent, or that the defendant had failed to exercise due care to prevent the calf from escaping from its enclosure. The defendant's proof on the other hand showed that the calf was at large on the highway without his knowledge, and that he had used reasonable care to restrain the calf from being at large, and that the calf had escaped without fault or negligence on his part. This testimony, which was neither denied nor discredited, was sufficient to overcome any inference or presumption of negligence on the part of the defendant that might have arisen from the proof of the fact itself that the calf was at large on the highway. The defendant, to exculpate himself from blame, was not required to show how the calf had escaped from the plaintiff's enclosure, or why the calf was at large on the highway. These facts were perhaps as completely unknown to the defendant as to the plaintiff. The defendant was only required to show, as he did show, that he had exercised reasonable care to prevent the calf from escaping from the defendant's enclosure, and that he was not at fault in permitting the calf to escape or to be at large on the highway. There was no error in the action of the lower court in granting the peremptory instruction requested by the defendant, and for the reasons stated above, the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.