620 So.2d 961 (1993)
Alene C. CARPENTER, Linda Hopper, Bobby L. Williams, Emily Ann Kendall, A Minor, By and Through her parents and next friends, Charlie and Tracy Kendall, Alene C. Carpenter, Widow of and as Representative for the Wrongful Death Beneficiaries of Henry L. Carpenter, Deceased,
v.
Jerry NOBILE.
Linda Hopper,
v.
Jerry Nobile.
Bobby L. Williams,
v.
Jerry Nobile.
Emily Ann KENDALL, A Minor, By and Through her parents and next friends, Charlie and Tracy KENDALL,
v.
Jerry NOBILE.
Alene C. CARPENTER, Widow of and as Representative for the Wrongful Death Beneficiaries of Henry L. Carpenter, Deceased,
v.
Jerry NOBILE.
Nos. 90-CA-967 through 90-CA-971.
Supreme Court of Mississippi.
June 10, 1993.
Lindsey C. Meador, Meador & Crump, Cleveland, for appellant.
Roy D. Campbell, Jr., Campbell Delong Hagwood Wade & Stuart, Greenville, for appellee.
Before HAWKINS, P.J., and McRAE and SMITH, JJ.
McRAE, Justice for the Court:
This appeal from a November 9, 1990, grant of summary judgment by the Sunflower County Circuit Court represents the consolidation of five lawsuits involving wrongful death and serious personal injuries which resulted from a collision between a horse and an automobile. Each plaintiff filed a complaint alleging that Jerry Nobile was negligent pursuant to Miss. Code Ann. § 69-13-111 (Supp. 1979). Nobile's motion for summary judgment was granted, and the plaintiffs' cases were dismissed. *962 Finding that the circuit court erred in misapplying the presumption of negligence expressed in the statute, and in finding that there were no genuine issues of material fact, we reverse the grant of summary judgment and remand this cause for further proceedings consistent with this opinion.

FACTS
In the early morning hours of October 22, 1989, Louisiana Tech Traveler, a halfton quarterhorse owned by Nobile, galloped onto Highway 82 in Sunflower County, approximately three-quarters of a mile from his paddock. He crashed into the hood and roof of an automobile driven by Henry Carpenter. Carpenter and the horse were killed, while the four other occupants of the car were seriously injured.
Louisiana Tech Traveler was kept on Nobile's property in a lot enclosed by a wire fence, which was approximately 48 inches high, except for a low spot, which was only 41 inches high. The fence was made of hog wire, stretched between creosoted fence posts set ten feet apart. Double strands of barbed wire topped the fence, except along the area between the gate and a shed, where only a single strand was used. The gate to the enclosure was made of wire with a metal pipe frame and positioned between two posts made from utility poles. The gate was fastened by a chain stapled to one of the posts. One end of the chain was brought through the gate wire and a link of the chain hooked over a small nailhead driven into the gate post. Louisiana Tech Traveler had grazed peacefully in this lot for approximately nine months prior to the incident complained of, leaving only when under Nobile's supervision.
Around 5:00 p.m., on October 21, 1989, Nobile's ten-year old son, Will, fed the horse. The trial judge found that Will then shut the gate, ran the chain through the gate wire and hooked a link of the chain on the nail in the fence post to fasten the gate closed. However, Nobile testified that he had not double-checked to make sure that his son had fastened the chain properly.
Several hours later, at approximately 11:30 p.m., Nobile observed that the gate to the paddock was closed, and that the horse was inside. The collision occurred some three hours later. Nobile testified that when he was called to the scene, the gate was open, and had swung inward. He found no broken pieces of fence or wire nor did it appear that the chain was broken. To the contrary, the chain appeared to have been lifted or to have fallen off.
The appellants submitted affidavits from two long-time horse owners regarding the custom and practice for confining horses, both showing that the enclosure Nobile had built was inadequate. Nobile maintained that a trespasser must have come along and opened the gate, allowing the horse to escape. No proof was submitted on this point beyond mere speculation. The circuit court found, however, that there was "no substantial probative evidence to support the Plaintiff's allegations that the Defendant's negligence was a proximate cause of the Plaintiff's injuries." Instead, the trial court surmised "that the horse might or could have gone over the 41-inch high portion of the fence between the fence and the house, or that the horse might or could have unfastened and opened the gate, or another possibility is that a trespasser might have taken or let the horse out." He then stated that the plaintiffs/appellants bore the burden of showing proximate cause in defense of a motion for summary judgment, and since they had failed to produce sufficient probative evidence to raise a genuine issue of material fact regarding the defendant's/appellee's negligence, Nobile was entitled to summary judgment as a matter of law.

I.
The appellants contend that the circuit court misconstrued Miss. Code Ann. § 69-13-111 (1979). They argue that to give the statute meaning, it must be read to provide not only a presumption that the owner of the horse was negligent in failing to properly confine the animal, but also to raise a presumption of proximate causation, which the circuit court did not consider. They further assert that, because there existed *963 genuine issues of material fact concerning the horse owner's negligence, the circuit court erred in granting Nobile's motion for summary judgment.
Miss. Code Ann. § 69-13-111 (1991) provides, in relevant part, that:
The owners of livestock which through their owner's negligence are found on federal or state designated paved highways or highway rights-of-way shall be subject to any damages as a result of wrecks, loss of life or bodily injury as a result of said livestock being on the above designate highways. The burden shall be on the owner of any such livestock to prove lack of negligence. (Emphasis added).
The language of the statute expressly creates a presumption that the owner of stray livestock is negligent in his confinement of the animal. Additionally, to give the statute any meaning, it must also be read to raise a presumption of proximate causation, which the circuit court did not apply. Accordingly, we find that the circuit court misconstrued § 69-13-111.
Until 1956, the owner of any livestock would only be liable for injuries caused by his livestock if the complainant could prove that he negligently or intentionally permitted the animal to run into the street. Pongetti v. Spraggins, 215 Miss. 397, 61 So.2d 158 (1952).
In Pongetti, a cow wandered onto a road and collided with an automobile. As in the case sub judice, the gate was found standing open but neither party could prove with certainty how the cow escaped. The plaintiffs were faced with the task of proving negligence in an incident to which there were neither witnesses nor affirmative clues as to what had taken place. To address this problem, the plaintiffs urged the Court to create a presumption of negligence, as many other states at the time recognized, shifting the burden to the defendant to prove that he, in fact, had used reasonable care to confine his livestock. Pongetti, 215 Miss. at 400, 61 So.2d at 160. The plaintiffs asserted that the animal which caused their injuries was under the control and management of the defendant and that the occurrence was such that, in the ordinary course of things, would not have happened, if the defendant had exercised proper care in controlling and managing the animal. They further argued that this assertion afforded sufficient evidence, in the absence of explanation by the defendant, that the injury arose from, or was caused by, the defendant's lack of care. At that time, this Court declined to adopt such a rule, but held that the issue of the livestock owner's negligence was a question for the jury to decide. Pongetti, 215 Miss. at 407, 61 So.2d at 162.
In 1956, the Legislature addressed this issue and amended § 69-13-111[1] to include the current language. This Court has addressed the statute only on three prior occasions.
This Court has commented on this statute only three times since its enactment. National Dairy Products Corp. v. Jumper, 241 Miss. 339, 130 So.2d 922 (1961), dealt largely with the damages element. Only passing reference was made to the statute:
[T]he burden of proof is on the owner of such livestock to prove lack of negligence. After hearing considerable testimony, the Court found that the tractor driver was not guilty of contributory negligence, and defendant's negligence [in properly maintaining the fence] proximately caused the damages to complainants' vehicle.
241 Miss. at 343, 130 So.2d at 923.
In Hagger v. Self, 254 Miss. 508, 183 So.2d 175 (1966), the Court addressed a case factually similar to the case sub judice. Hagger involved a damage suit resulting from an accident between a bull and pickup truck. Plaintiff offered proof that his truck was damaged as a result of the collision with the bull and that the collision took place on a state-designated highway. *964 This Court found that the proof presented established a "prima facie case of liability under the provisions of [the statute]". 254 Miss. at 510, 183 So.2d at 175. The defendants were then allowed to present proof of reasonable care. 254 Miss. at 511, 183 So.2d at 176. The case went to a jury, which found that the defendants had successfully rebutted the presumption.
Most recently, this Court addressed the statute in Hartford Ins. Group v. Massey, 216 So.2d 415 (Miss. 1968). There, the defendant rebutted the presumption of negligence. The Court, citing Jumper and Hagger, affirmed that "the essentials necessary for appellant to maintain his cause of action [are] set out in" those cases and that the appellant "made out a prima facie case under the rule in Hagger by showing that appellant struck a cow on a state paved highway and that the cow belonged to the appellee." Id. at 417.
There are four elements necessary to prove a claim of negligence:
1. A duty, or obligation, recognized by law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
2. A breach of the duty, a failure on the person's part to conform to the standard required.
3. A reasonably close causal connection between the conduct and the resulting injury.
4. Actual loss or damage resulting to the interests of another.
The parties dispute whether the word "negligence" as used in the presumption clause of the statute applies only to the first two elements of the tort or to all four elements taken together.
Nobile contends that the language of the statute should be construed very narrowly so as to make the presumption of negligence apply only to the second element: form of the act or omission, to the exclusion of the proximate cause element. In other words, he contends that although there may be a presumption of a lack of due care in confining the horse, the burden remains on the plaintiff to show that the defendant's act or omission was, in fact, the proximate cause of the injuries suffered. We reject Nobile's argument that applying the presumption to proximate cause would, by judicial construction, make every owner of livestock a virtual insurer of public safety. However, the presumption does not create a case of absolute liability. It simply makes a prima facie case of negligence to the extent that the defendant is then called upon to meet it with an explanation.
The appellants, on the other hand, assert that to give the statute any meaning whatsoever, it is necessary to find that when the Legislature used the word "negligence" in the statute, it was referring to both the act or omission, itself, as well as to proximate causation. The appellants contend that in most cases, the owner will be found negligent. Further, they suggest that the rebuttable presumption was added so as to give the livestock owner an opportunity to escape liability if he can prove that he did, in fact, use reasonable care but the animal still escaped, or was freed by a third party, thus creating a superseding intervening cause for the injury.
Because the parties are unable to gather proof as to why the horse travelled onto the highway, they are left with the assumption that his confinement was not secure. If this was the case, Nobile should have been given the opportunity to rebut the presumption with his own evidence to the contrary. Nobile, however, was unable to rebut the presumption; he was only able to speculate as to what might have happened that night. Moreover, applying the presumption of negligence to the causation element is not at all akin to a finding of strict liability in tort as Nobile contends. The presumption is merely a necessary starting point in the absence of any other affirmative proof.
The tragic escape of Louisiana Tech Traveler raises two separate questions: first, whether the actual act or omission that set him free was negligent; and second, whether the runaway horse actually *965 caused the accident. Causation is self-evident. We know that the horse caused the accident, we just do not know why he was on the road. Why he was on the road is a question for a jury to decide. The negligence language in the statute applies both to the act and proximate cause elements and, therefore, the plaintiff need not bear the burden of showing proximate cause.

II.
We further find that the trial court erred in granting summary judgment because there exist genuine issues of material fact regarding Nobile's negligence. These are questions for a jury to decide. The circuit court's order granting Nobile's motion for summary judgment found that the "[p]laintiff ha[d] failed to come forward with substantial probative evidence to show that there [was] a genuine issue of material fact that the Defendant's negligence was the proximate cause of Plaintiff's injuries. [Thus] [d]efendant was entitled to judgment as a matter of law." However, we read the presumption under the statute to include proximate cause. Therefore, a plaintiff need not present affirmative proof of causation. Summary judgment for failure to give proof which is not required is improper.
Even without relying upon the presumption, the appellants demonstrated that there were genuine issues of material fact on the issue of causation. Nobile, relying on mere speculation, maintained that a trespasser came onto the premises and freed the quarterhorse. There were no footprints or other physical evidence to indicate that someone may have been on the premises. Additionally, Nobile testified in his deposition that he never had trouble with trespassers before. The appellants, however, collected affidavits from other horse owners familiar with the practice of securely keeping horses and presented the court with some more tangible theories as to how the incident may have occurred. In its opinion, the circuit court speculated that there were a variety of ways the horse might of escaped, finding that:
(a) That the horse might or could have gone over the 41-inch high section of the fence between the gate and the house, or
(b) That the horse might or could have unfastened or opened the gate, or
(c) That a trespasser might have taken or let the horse out.
We have always condemned the use of "possible" and "could have" evidence. Foster v. State, 508 So.2d 1111, 1118 (Miss. 1987). In this case, we have no affirmative proof of how the horse escaped. Summary judgment is not a substitute for trial where disputed factual issues exist. Smith v. H.C. Bailey Companies, 477 So.2d 224 (Miss. 1985). Before summary judgment is granted, it must be determined whether reasonable jurors could not differ on the factual questions in issue. Sanford v. Federated Guaranty Insurance Company, 522 So.2d 214, 217 (Miss. 1988). Likewise, in American Legion Ladiner Post No. 42, Inc. v. City of Ocean Springs, 562 So.2d 103 (Miss. 1990), we held that an issue of fact precluding summary judgment may be present where there is more than one reasonable interpretation of any given undisputed testimony and where materially different but nevertheless reasonable inferences may be drawn from uncontradicted evidentiary facts.
In the case sub judice, the circuit court incorrectly shifted the burden of proof onto the non-moving party. Photographs of the gate, its chain and nail latch, and a videotape exhibit are uncontradicted. The parties agree that these are true and accurate depictions of the appearance of the paddock on the night of the escape and subsequent collision. The interpretation of these undisputed facts, however, is subject to materially differing inferences. Nobile urges us to infer that a reasonable standard of care had been exercised in containing the quarterhorse, and further, that it was just as reasonable that the horse was released from its enclosure by an unknown trespasser as it would be that the horse maneuvered the latch off the gate. Because the grant of summary judgment was *966 inappropriate, we reverse and remand for trial.
REVERSED AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
NOTES
[1] Then Miss. Code Ann. § 4876-05 (1957). It was also amended in 1979, but the relevant language remained unchanged.