LEE, J.,
for the Court:
¶ 1. This is an appeal from the Circuit Court of Madison County which affirmed the decision of the County Court of Madison County to grant a peremptory instruction in favor of Roger Penn, the appellee and defendant below. The appellant, Dwan Harris, asserts that Penn’s motion for a peremptory instruction should not have been granted by the county court and that the circuit court committed reversible error in affirming the decision. After thoroughly reviewing the record, we find the peremptory instruction to have been granted in accordance with precedent established in this state and affirm.
¶ 2. Harris sought to recover for personal injury and property damage arising from a collision of Harris’s car with a bull owned by Penn, a restauranteur and cattle farmer. The collision occurred at approximately midnight on Rankin Road, a paved road in Madison County, where Penn owned 179 acres of land which accommodated his cattle operation of roughly 100 head of cattle. On the night of the accident approximately ten head of cattle escaped from one of Penn’s enclosed pastures adjacent to Rankin Road. Penn was notified that his cows were in the road by Dr. Tip Hailey, a veterinarian and Penn’s neighbor one mile to the east of Penn’s pasture. Dr. Hailey was on his way to his clinic in response to an emergency call when he saw the animals on the road and called Penn, suspecting that they were his. When Penn arrived to gather his cattle Harris’s car had already collided with the bull. The bull was killed and Harris was taken to the emergency room where he was released early that same morning. Harris’s new Mustang automobile was totaled. Penn rounded his cattle and put them in a catch pen. One cow, however, would not follow him and instead led him to the area where the fence was down and the cows escaped.
¶ 3. Harris presented witnesses to show that the bull he hit on Rankin Road belonged to Penn, that his car was totaled, and that he incurred medically related expenses of almost $6,000. The substance of Harris’s complaint is encompassed in Miss. Code Ann. § 69-13-111 (Rev.1991), which provides that:
The owners of livestock which through their owner’s negligence are found on federal or state designated paved highways or highway rights-of-way shall be subject to any damages as a result of wrecks, loss of life or bodily injury as a result of said, livestock being on the *546 above designated highways. The burden shall be on the owner of any such livestock to prove lack of negligence....
Case law has expressly construed the language of this statute to create a presumption that the owner of stray livestock is negligent in his confinement of the animal. Carpenter v. Nobile, 620 So.2d 961, 963 (Miss.1993). The presumption has been interpreted to apply to proximate cause as well. Id. at 964. Thus, once Harris proved that he incurred damages as a result of hitting Penn’s bull in accordance with the statute, a prima facie case of negligence on the part of Penn was raised. Hagger v. Self, 254 Miss. 508, 510-11, 183 So.2d 175, 176 (1966); Hartford Ins. Group v. Massey, 216 So.2d 415, 417 (Miss.1968). This presumption then requires rebuttal on Penn’s part as the defendant to prove a lack of negligence on his part. Carpenter, 620 So.2d at 964. Case law is clear, however, that the presumption does not create a case of absolute liability. Id.
STANDARD OF REVIEW
¶ 4. The county court is the finder of fact, and we, like the circuit court, are bound by the judgment of the county court if supported by substantial evidence and not manifestly wrong. Patel v. Telerent Leasing Corp. 574 So.2d 3, 6 (Miss.1990). Such findings may not be disturbed on appeal provided there is substantial supporting evidence in the trial record. Dungan v. Dick Moore, Inc. 463 So.2d 1094, 1100 (Miss.1985).
¶ 5. The standard for determining whether a peremptory instruction should be granted has been established as follows:
The request for a peremptory instruction ... tests the legal sufficiency of the evidence supporting the verdict. [Itjasks the court to hold, as a matter of law, that the evidence is insufficient to support a verdict in favor of the non-movant. Where such a request has been made, the trial court must consider all of the evidence — not just the evidence which supports the non-movant’s case — in the light most favorable to the party opposed to the motion. The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the mov-ant that reasonable men could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury’s verdict allowed to stand.
First United Bank of Poplarville v. Reid, 612 So.2d 1131, 1136 (Miss.1992) (quoting Weems v. American Sec. Ins. Co., 450 So.2d 431, 435 (Miss.1984)).
Rebuttal of the Presumption of Negligence
¶ 6. Penn, along with four other witnesses, testified on behalf of his defense in rebuttal of Harris’s prima facie case. Penn testified that he had been in the cattle business for thirty years and owned several farms. He had purchased this particular farm on Rankin Road two to three years prior to the accident. Approximately five to six months after he purchased the property, he tore the old fence that surrounded the property down and built a new one to accommodate the cattle operation that he intended to establish at that location. We will not burden this opinion with the details of the construction of the fence; it will suffice to say that Penn described the manner in which he built the fence and considered it to be the best in Madison County, using the highest *547 quality materials and structurally sound building techniques. Being only two years old with a life expectancy of twenty to thirty years, the fence was considered still new at the time of the accident. Penn testified that the fence had never been repaired prior to the accident because it did not need repair and was just as strong on the day of the accident as it was when it was built.
¶ 7. Photographs of the fence were introduced into evidence. They were taken after the accident and after the fence was repaired. Penn and others testified that the photographs were an accurate representation of the fence before the cows broke it down and that the fence was repaired to be just as it was prior to the accident.
¶ 8. Penn said that because this farm is near his restaurant, he drives by the property on his way home several times a day and looks at the fence two to five times a day. Penn recessed the fence in one area along Rankin Road to create what Penn referred to as the “turning around place”. This area provides Penn a place to pull off the road so that he can stop to observe his cows on his way to his restaurants every day without obstructing traffic. Because the portion of the fence that came down is within six feet of Penn’s parking area, Penn said that he would have noticed if anything had been wrong with the fence. In addition, Penn said that every day one to three men, usually two, come by the farm in the morning and again in the afternoon to feed the animals and observe the fence. Penn said that it is obvious when a fence is “getting bad” because the barbed wire will loose its tension and sag and the boards will droop. If the boards and wires are straight then the tension is good. The fence was constructed of four two by six boards twelve to fourteen feet long and three strands of barbed wire, one strand being placed between each board. Penn repaired the fence the morning after the accident using the same boards that had been on the fence prior to the accident because, having come down as a unit, they were not broken. The barbed wire and the boards came loose, but the posts were still standing.
¶ 9. Penn said the bull that was killed was registered. He first saw the bull at a show when the bull was shown by a child no more than ten years old leading him with a halter. Penn said that the bull had been in shows since he was small but that Penn did not show him after he purchased him and that he was able to put a halter on him.
¶ 10. Two farmers also testified for the defense. Terry Ozburn, a one time cattle farmer familiar with livestock fences, said he passed by Penn’s pasture twelve times a day during the month of the accident, being his main thoroughfare to town. He was certain that he drove by the fence on the day of the accident. He said the fence had not been in disrepair since Penn built it and that the fence was probably the best livestock fence around. He said the fence had looked as it did in the pictures that were introduced into evidence from the time it was built. Ozburn was familiar with the property prior to Penn’s having purchased it and indicated that he remembered when Penn bought the property and built the new fence. Ozburn once stopped shortly after the fence was built to ask Penn what kind of fence posts he used.
¶ 11. Dennis Rankin, a farmer on Rankin Road who had been in the cattle business all of his life, also testified for Penn. Rankin said that his farm was fenced and he had an interest in fences and in what other people in the cattle business were doing. Rankin passed by Penn’s farm daily and said that he probably went by it on the day of the accident. He said that *548 Penn’s fence was an excellent fence in excellent shape and he believed it to be, based on his observation of fences, “in the top ten percent of fences” in Madison County.
¶ 12. Dr. Tip Hailey also testified as a fact witness for Penn. He said he drove by the fence four times a day and had been by at 8:30 on the night of the accident on his way home. He too said that the fence was in excellent shape and that Penn was one of the few people he knew of who kept the grass cut underneath his fences all year. Hailey said that this keeps woody vines from entangling in the fence which can reduce its strength and make it easier to break down. He said that Penn keeps the fences on all of his farms well maintained.
¶ 13. Dr. James Alexander was presented as an expert for the defense. He is a licensed veterinarian in Mississippi whose practice is limited to cattle and horses. He has an undergraduate degree in animal science and often provides consultation and designs for fencing intended for retaining cattle. This entails determining where the pressure points will be in order to minimize the escape of cattle and maximize the chance of the fence holding up under pressure. He is familiar with situations where fences are torn down in stampedes and provides consultation for fencing needs for various cattle operations. He had recently designed a facility for 5,000 head of cattle for Cal Maine Foods Dairy in Edwards. He said that most cattle fences consist of three strands of barbed' wire and have a life expectancy of twenty years. In his experience he is aware of a herd of cattle breaking through a fence two or three times a year. He says he has seen herds go through two strands of electric fencing and fences of four strands of barbed wire. He has also seen a catch pen wall taken down. Such pens are made of more durable materials than other fences.
¶ 14. He inspected Penn’s fence two years after the accident and said that the pictures represented the fence as it appeared upon inspection. He said the fence was above standard for this state. He said rarely did he ever see a board fence built with barbed wire as this one was. Usually, he said, a fence is one or the other. He shook the fence and said it was exceptionally strong. He believed wild dogs or coyotes frightened the animals on the night of the accident and said that economics rule out building a fence that would withstand the pressure of animals moving in mass.
¶ 15. The defense rested after Dr. Alexander’s testimony. Harris offered no rebuttal.
Request for Peremptory Instruction
¶ 16. At this time Penn’s request for a peremptory instruction was granted. The court relied on Carpenter v. Nobile, 620 So.2d 961 (Miss.1993). In so relying, the court pointed out that Carpenter, in holding that the presumption of proximate cause would apply as well as the presumption of negligence, expressly stated that this did not create a case of absolute liability. The Carpenter court refused to construe this presumption as one which would make every owner of livestock a virtual insurer of public safety. Id. at 964.
¶ 17. Though summary judgment was reversed in Carpenter, we find the facts in that case distinguishable, and that ease therefore is not inconsistent with the case sub judice. In Carpenter, the supreme court found genuine issues of material fact regarding whether the owner' of the horse was negligent in his confinement of the horse and whether such negligence was the cause of the runaway horse’s collision with an automobile. Id. at 965. Unlike this case, in Carpenter there was a ques *549 tion of fact as to how the horse actually escaped. At that trial evidence was presented to show that the gate to the pen was found to be unlatched. The owner was not able to rebut the plaintiffs prima facie case because this evidence was not contradicted. Id. The owner, however, speculated that a trespasser had opened the gate. Id. Evidence was also presented indicating that the horse could have jumped out of the enclosure over a low portion of the fence or that the horse could have unlatched the gate himself. Because of this evidence the supreme court found that there were genuine issues of material fact that should have been submitted to the jury and reversed summary judgment. Id.
¶ 18. In this case, there is no question of fact as to how the animals escaped the enclosure. Penn testified that his gate was closed. Dr. Alexander testified that the manner in which the fence came down indicated that the animals had pushed against it in mass, applying enough pressure to bring it down, and Harris offered no rebuttal. Harris had the right and the opportunity to produce evidence to show negligence on Penn’s part but did not do so. There are no fact questions for a jury to consider.
¶ 19. We also agree with the lower court that Hartford Insurance Group v. Massey, 216 So.2d at 417, is on point. In that case a calf escaped from an enclosure and was struck by a vehicle. The plaintiff argued that because the fence was twelve years old, it was in poor condition. The defense rebutted and presented witnesses showing that the fence was regularly inspected and in sound condition. The supreme court, in essence, refused to apply strict liability, stating that the appellant had predicated his case on the fact that the appellee’s calf was on the highway and was struck by a truck. The peremptory instruction was therefore properly granted. Id. at 417.
¶ 20. In addition, we find this case to be consistent with Hagger v. Self, 254 Miss. 508, 183 So.2d 175 (1966), even though, like Carpenter, that case went to the jury. In that case a bull pushed the fence from the ground, escaped and was hit by a vehicle. The defendant presented evidence showing lack of negligence. Evidence also indicated that this bull had escaped before and had been in a fight with another bull. The case therefore went to the jury. Id. at 511, 183 So.2d 175. Again, no such evidence calling for a jury question was presented in this case.
¶ 21. Harris complains that Penn failed to rebut the presumption of negligence because Penn did not show that he physically inspected the fence. Harris cites no authority placing this burden on a livestock owner or holding that a livestock owner is negligent for failing to perform a physical inspection. Finding no precedent supporting this contention, we find that it has no merit.
¶ 22. Harris also contends that the trial court erred by giving weight to the testimony of Penn’s “so-called” expert witness, Dr. Alexander, who testified in the field of livestock fence construction. The circuit court, after the completion of voir dire, found Dr. Alexander qualified to so testify. Whether a proffered witness has obtained the degree of specialized knowledge in a particular field of expertise is within the discretion of the trial court, and absent abuse, will not be disturbed on appeal. Pharr v. Anderson, 436 So.2d 1357, 1359 (Miss.1983). In addition, we are not disturbed by the fact that Dr. Alexander inspected the fence two years after the accident and viewed the pictures of the fence taken after repairs had been made. The circuit court therefore allowed the proper foundation to be “laid regard *550 ing the photographs in direct and cross-examination permitting explanations for repairs made in the fence subsequent to the accident, and we find no error in the court’s decision to allow Dr. Alexander to testify.”
¶ 23. We note that case law has construed Miss.Code Ann. § 69-13-111 (Rev. 1991) inapplicable to accidents having occurred on county roads. Barrett v. Parker, 757 So.2d 182, 185 (Miss.2000). No evidence was presented to establish whether Rankin Road, where the accident occurred, was or was not a “federal or state designated paved highway! ] or highway right! ]-of-way” in order to determine whether this case falls under the statute. Under Barrett, an accident on a county road places the burden on the plaintiff to prove that the defendant is negligent in allowing livestock to escape; whereas, the language of the statute creates a presumption that the owner of stray livestock is negligent in his confinement of the animal. Carpenter, 620 So.2d at 963-64. Though Harris’s complaint is based on section 69-13-111, the burden of proof, however, shifted to him once Penn successfully rebutted the prima facie case. Hartford Insurance Group v. Massey, 216 So.2d at 417. We therefore find that the outcome would be the same regardless of. which legal standard is applied.
CONCLUSION
¶ 24. Looking at the evidence in favor of Harris, the record shows that he presented no evidence demonstrating that Penn was negligent in the construction or the maintenance of the fence to support a verdict in his favor. Consequently, as in Hartford Insurance Group, a peremptory instruction was proper because Harris failed to demonstrate negligence on Penn’s part once Penn showed that he was not negligent. Id. In conclusion, we find that the trial court has properly reviewed the evidence in light of Penn’s request for a peremptory instruction in accordance with the standard enunciated in First United Bank of Poplarville v. Reid, 612 So.2d at 1136. Looking at the evidence in the light most favorable to Harris, as the non-mov-ant, giving him the benefit of all favorable inferences that may reasonably be drawn from the evidence, we find that these facts and inferences point so overwhelmingly in favor of Penn that reasonable men could not arrive at a contrary verdict and conclude that the motion for a peremptory instruction was properly granted. Id.
¶ 25. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., AND CHANDLER, J., NOT PARTICIPATING.