# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-00289-SCT

*SPOTLITE SKATING RINK, INC.*

*v.*

*BIANCA ZWYACA BARNES, BY AND THROUGH MOTHER AND NEXT FRIEND, VEARLY BARNES ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES AND AS ADMINISTRATRIX OF THE ESTATE OF BIANCA ZWYACA BARNES, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/2005 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LEANN W. NEALEY |
| | PAUL MICHAEL ELLIS |
| ATTORNEY FOR APPELLEE: | GEORGE F. HOLLOWELL, JR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 06/19/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., DICKINSON AND RANDOLPH, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

**Statement of the Case**

¶1. This case involves a wrongful death action arising from a fall at a skating rink. The jury found for the plaintiff and awarded damages in the amount of $600,000. The defendant

has asked this Court to review the jury's finding of liability and the damages award. Finding no error, we affirm the judgment.

**Facts**

¶2. The undisputed facts are as follows: On Christmas night 2000, Bianca Barnes took a bus from her home in Ruleville to the Spotlite Skating Rink in Greenwood. Bianca was ten years old at the time. Shortly after arriving at the rink, Bianca fell once, hit her head and began crying. She eventually stopped crying and rode the bus back home. Because her mother was working that night, she went to a neighbor's house. Her mother retrieved Bianca from the neighbor's house, but did not learn that she had fallen until the next day. By that time, Bianca had become unconscious and was taken to the local hospital. On December 27, 2000, Bianca was pronounced dead. An undiagnosed colloid cyst had blocked the flow of spinal fluid from her brain, ultimately causing her death.

¶3. The events surrounding Bianca's fall, Spotlite's actions thereafter, and the precise cause of Bianca's death are unclear. None of the plaintiff's witnesses saw Bianca fall, but two of the children who were traveling with Bianca testified that when she fell, Bianca was not wearing skates. They also testified that after they saw her on the floor crying and holding her head, they helped her to a nearby table. One of the witnesses testified that Bianca stayed at the table with her head down and that she did not go back onto the floor. None of the children were asked by a Spotlite employee how to get in touch with Bianca's mother, but they said that both the owner and the employee knew that she worked at the sheriff's department. One of them also testified that no one from Spotlite had accompanied the group home to Ruleville.

2

¶4. Marvin Miller, a Spotlite employee, testified that Bianca was wearing skates and that he would not have let her onto the floor without them. He said that he helped Bianca onto the floor because he was told that she did not know how to skate. Miller testified that he saw Bianca fall after skating about ten feet, and that he immediately helped her off the floor. He stated that she was crying, but that she did not have any visible bumps or bleeding. Miller then got a bag of ice from the owner and gave it to Bianca. He testified that he did not know if Bianca's mother worked at the sheriff's department or the police department, but he did get her home number from one of Bianca's friends. Miller said that he tried to call several times, but no one answered. A short time later, Miller saw Bianca walking around, looking "agitated" but not crying. Miller testified that he rode the bus back to Ruleville with Bianca and escorted her off the bus, but her mother was not home.

¶5. One of Spotlite's owners, Freddie Johnson, testified that she tended to Bianca after her fall. Bianca was crying and told Johnson that she was hot. Twenty or thirty minutes after Bianca's fall, Johnson saw her back out on the floor. According to Johnson, Miller told her that he would tell Bianca's mother about the fall.

¶6. Dr. Leonard Lucenko, an expert in the field of risk management and recreational facility management, testified that Bianca's death could have been avoided if the skating rink had followed the industry standards. He testified that proper maintenance of the floor and proper supervision would have prevented her fall, and that once Bianca fell and continued to cry, Spotlite should have taken her to a hospital. The defendant's expert in this area testified that the rink was reasonably safe, but did not offer an opinion as to the care Bianca should have received after her fall.

3

¶7. The various medical experts agreed that a colloid cyst is a rare congenital condition. Although two of the experts opined that the fall caused the cyst to move and become fatal, two other doctors testified that the fall would not have affected the cyst and that Bianca would have died anyway. One of the doctors testified that if the cyst had been detected, that it could have been surgically removed, although another doctor said that the operation was a "fairly hazardous operation with a fairly high morbidity and mortality rate."

¶8. The plaintiff proceeded against Spotlite on two theories: (1) that Spotlite was negligent in supervising Bianca and could have prevented the fall; and (2) that Spotlite was negligent by failing to render aid to Bianca once she was injured. The jury was given instructions as to both theories and returned a general verdict in favor of the plaintiff, assessing damages at $600,000.[1]

### Issues

¶9. Spotlite contends that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict and asks this Court to reverse and render. Specifically, Spotlite argues that there was no evidence to support a finding (1) that Spotlite breached its duty of supervision and care; (2) that any alleged negligence on behalf of Spotlite caused Bianca's death; or (3) that Bianca's death was a foreseeable consequence of Spotlite's alleged negligence. In the alternative, Spotlite argues that even if the evidence was

---

[1]The plaintiff also sued North Sunflower County Hospital, Delta Regional Medical Center, and three physicians for medical negligence. The trial judge directed a verdict in favor of these defendants at the close of the plaintiff's case, citing a lack of causation.

sufficient to support the verdict, the trial court erred in admitting expert testimony regarding damages.

## Standard of Review

¶10. The standard of review for the denial of a directed verdict and a judgment notwithstanding the verdict is the same. *Ala. Great S. R.R. Co. v. Lee*, 826 So. 2d 1232, 1235 (Miss. 2002). "This Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence." *Id.* at 1235 (quoting *Steele v. Inn of Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss. 1997)). "If the evidence is sufficient to support a verdict in favor of the non-moving party, the trial court properly denied the motion." *Henson v. Roberts*, 679 So. 2d 1041, 1044-1045 (Miss. 1996) (citations omitted). In other words, this Court considers "whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." *White v. Stewman*, 932 So. 2d 27, 32 (Miss. 2006).

## Discussion

¶11. As with any negligence case, a plaintiff must prove: "(1) a **duty** owed by the defendant to the plaintiff; (2) a **breach** of that duty; (3) **damages**; and (4) a causal connection between the breach and the damages, such that the breach is the **proximate cause** of the damages." *Grisham v. John Q. Long V.F.W., Post No. 4057, Inc.*, 519 So. 2d 413, 416 (Miss. 1988) (citations omitted) (emphasis in original).

**I. Negligent Supervision.**

¶12. Regarding the duty to supervise, "the proprietor engaged in the business of providing public recreation or amusement must exercise a reasonable degree of watchfulness to guard against injuries likely to happen in view of the character of the amusement." *Blizzard v. Fitzsimmons*, 193 Miss. 484, 491, 10 So. 2d 343, 344 (1942). Taking the evidence in the light most favorable to the plaintiff, Spotlite breached its duty of supervision by allowing Bianca onto the skating rink without skates. Both the plaintiff's expert and Spotlite's employee testified that the rink should not allow persons onto the floor without skates. Although the employee testified that Bianca was wearing skates and that he helped her onto the floor, there was sufficient evidence that Bianca was not wearing skates and that no employee was present when she entered the rink.

¶13. Spotlite also argues that there was no proof of causation because her preexisting medical condition was the sole cause of her death. Spotlite points to the expert medical testimony that Bianca would have died even without falling. However, there was sufficient evidence of causation, as two expert witnesses testified that the fall caused the cyst to become dislodged and block the flow of fluid from her brain.

¶14. Finally, Spotlite argues that it cannot be held liable for Bianca's death because such an injury was unforeseeable. "It is well established in this State, that in order for one to be liable in a negligence action the test is not whether they were able to foresee the particular type of injury suffered, but whether they could foresee an injury would result from their actions." *Robley v. Blue Cross/Blue Shield*, 935 So. 2d 990, 997 (Miss. 2006) (citing *M & M Pipe & Pressure Vessel Fabricators, Inc. v. Roberts*, 531 So. 2d 615, 618 (Miss. 1988)).

6

Further, "[t]he fact that an injury rarely occurs, or has never happened, is insufficient to protect the actor from a finding of negligence. . . . If *some* injury is to be anticipated, this Court will find liability even if the *particular* injury could not be foreseen." ***Gulledge v. Shaw***, 880 So. 2d 288, 293 (Miss. 2004) (citing ***Rein v. Benchmark Constr. Co.***, 865 So. 2d 1134, 1145 (Miss. 2004)) (emphasis in original).

¶15.    Spotlite relies on ***City of Jackson v. Estate of Stewart ex rel. Womack***, 908 So. 2d 703 (Miss. 2005). In ***Stewart***, suit was brought after an elderly woman fell in a parking lot and suffered a stroke. This Court found that the stroke was not a foreseeable result of the fall because the only witness to testify concerning causation testified that it was "almost unheard of for a minor fall to cause a stroke." ***Id.*** at 715. Unlike ***Stewart***, in the present case, two medical experts testified that the head trauma caused Bianca's cyst to dislodge and eventually render her brain dead. Therefore, even if Bianca's death may not have been foreseeable, there was sufficient evidence that a fall resulting in a head injury was a reasonably foreseeable consequence of a lack of supervision.

¶16.    This Court finds this issue to be without merit.

**II. Failure to Render Aid.**

¶17.    There is scant Mississippi law discussing a proprietor's duty to render aid to one injured on his premises. The Restatement (Second) of Torts provides that an owner of land who holds it open to the public is under a duty to take reasonable action "to give [invitees] first aid after [the owner] knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Restatement (Second) of Torts § 314A(1)(b)

7

(1965). This standard of care is consistent with this Court's holding in ***Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*** 519 So. 2d 413, 417 (Miss. 1988). In ***Grisham***, a patron was injured in the parking lot by another patron. Although this Court affirmed summary judgment in favor of the defendant, we held that "V.F.W. officials had an affirmative duty to aid Mabeline once they learned that she had been injured on V.F.W. premises."[2] ***Id.***

¶18. According to the plaintiff's witnesses in the present case, no one from Spotlite attempted to render care to Bianca after she had fallen. Further, no one from Spotlite made any attempt to contact Bianca's mother at her workplace, even though they knew she was working at the sheriff's department. Although Miller testified that he rode the bus back to Ruleville and attempted to contact Bianca's mother upon arrival, there was testimony that he was not on the bus.

¶19. Dr. Lucenko testified that Spotlite should have required a parental form, and should have had a staff member trained in CPR and first-aid. He opined that Spotlite should have taken Bianca to a hospital after she continued to cry and complain of a headache.

¶20. Viewing all of the evidence in the light most favorable to the plaintiff, there was sufficient evidence to support that Spotlite breached its duty of care.

---

[2]The Court of Appeals discussed ***Grisham*** and the Restatement standard in ***Estate of White v. Rainbow Casino-Vicksburg Partnership, L.P.*** , 910 So. 2d 713, 718 -719 (Miss. Ct. App. 2005). The court found that Mississippi has not adopted the Restatement standard and that it was unclear in ***Grisham*** when the duty to render aid arose. ***Id.***

¶21.   Regarding the causation prong, Spotlite argues that there was insufficient evidence that had Bianca received prompt medical attention, her life could have been saved. Although one doctor testified that the operation was a "fairly hazardous operation with a fairly high morbidity and mortality rate," another doctor testified that if the cyst had been detected, that it could have been surgically removed. Because there was sufficient evidence to support causation, the trial court did not err in denying the defendants' motion for a directed verdict and motion for judgment notwithstanding the verdict.

## III. Expert Testimony.

¶22.   Spotlite's alternative argument is that the trial court erred in admitting the testimony of economist Dr. George Carter. This Court examines a trial court's decision to allow evidence, including proffered expert testimony, under an "abuse of discretion" standard. *Webb v. Braswell*, 930 So. 2d 387, 397 (Miss. 2006).

¶23.   Spotlite argues that Dr. Carter's testimony was not reliable expert testimony because he failed to consider characteristics specific to Bianca when calculating the present net cash value of her life expectancy. The standard for determining a child's lost net cash value was set out in *Greyhound Lines, Inc. v. Sutton*, 765 So. 2d 1269, 1277 (Miss. 2000):

> [W]e hold that in cases brought for the wrongful death of a child where there is no past income upon which to base a calculation of projected future income, there is a rebuttable presumption that the deceased child's income would have been the equivalent of the national average as set forth by the United States Department of Labor. This presumption will give both parties in civil actions a reasonable benchmark to follow in assessing damages. Either party may rebut the presumption by presenting relevant credible evidence to the finder of fact. Such evidence might include, but is certainly not limited to, testimony regarding the child's age, life expectancy, precocity, mental and physical

9

> health, intellectual development, and relevant family circumstances. This evidence will allow the litigants to tailor their proof to the aptitudes and talents of the individual's life being measured.

This Court went on to say that "the consumption rate is another factor which may be argued by the parties to the finder of fact in support of increasing or decreasing the presumption that the deceased child's income would have been equivalent to the national average." *Id.* at 1279.

¶24. Dr. Carter testified that the present net cash value of the life expectancy of Bianca was $502,379. To arrive at this figure, Dr. Carter reviewed this Court's decision in *Sutton*. He took the national average income established by the U.S. Department of Labor, multiplied that number by her work life expectancy, and subtracted taxes, personal consumption, and education costs. He then added fringe benefits and entitlement benefits to arrive at his final figure.

¶25. Dr. Carter was vigorously cross-examined, explaining that characteristics specific to Bianca were not included in his analysis. He testified that his results were calculated from the national average, not the average wage for the Mississippi Delta. Dr. Carter explained that his assumption that Bianca would marry and go to college was based on the typical American female. He also testified that he was not told that Bianca had a rare congenital cyst that might have decreased her life expectancy.

¶26. Spotlite argues on appeal, as it did at trial, that Dr. Carter's testimony should have been excluded under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and Mississippi Rule of Evidence 702 because he failed

10

to consider "facts or data" specific to Bianca's case. M.R.E. 702. Spotlite argues that *Sutton* was written before this Court adopted the "tightened" *Daubert* standard in *Mississippi Transportation Commission v. McLemore*, 863 So. 2d 31 (Miss. 2003), and that the *Sutton* standard should be amended.

¶27.    This Court's adoption of *Daubert* is not a basis for amending *Sutton*. The *Sutton* opinion specifically rejected the idea that the income for children should be based on the average income for a person in the community in which they lived. *Sutton*, 765 So. 2d at 1276. This Court found that this method was "unfair and prejudicial" and would "result in potentially disparate recoveries for children from affluent communities . . . as opposed to children from less affluent areas." *Id.*

> Who is to say that a child from the most impoverished part of the state or with extremely poor parents has less of a future earnings potential than a child from the wealthiest part of the state or with wealthy parents? Today's society is much more mobile than in the past. Additionally, there are many more educational and job-training opportunities available for children as a whole today. We must not assume that individuals forever remain shackled by the bounds of community or class. The law loves certainty and economy of effort, but the law also respects individual aptitudes and differences.

*Id.* at 1276-77. As required by *Sutton*, Spotlite was given ample opportunity to rebut the presumption that Bianca's income would have been the equivalent of the national average as set forth by the United States Department of Labor. As the finder of fact, the jury found that the defendant had not adequately rebutted this presumption.

## Conclusion

11

¶28. Because there was sufficient evidence to support the plaintiff's claims, the jury's finding of liability is affirmed. In addition, this Court finds no reason to amend our prior case law regarding computation of damages.

¶29. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**