910 So.2d 713 (2005)
The ESTATE OF Muriel Alice WHITE, by Alfred J. WHITE, Individually and as Executor: Alfred J. White, Appellant
v.
RAINBOW CASINO-VICKSBURG PARTNERSHIP, L.P., Appellee.
No. 2003-CA-01947-COA.
Court of Appeals of Mississippi.
March 15, 2005.
*714 Wren Carroll Way, Vicksburg, attorney for appellant.
John H. Holloman, Jackson, Franklin Alan Garrison, attorneys for appellee.
Before LEE, P.J., GRIFFIS, and ISHEE, JJ.
LEE, P.J., for the Court.

FACTS
¶ 1. This appeal arises from the tragic death of Muriel White. Around 10:20 a.m. on September 5, 2001, Muriel and her husband, Alfred White, visited the Rainbow Casino in Vicksburg. Like many casinos, Rainbow serves its guests complimentary alcohol while they gamble. While Muriel gambled, Rainbow employees served her six eight-ounce servings of beer. Alfred also served Muriel six eight-ounce servings of beer. Security cameras at the casino recorded the last beer served to her by a casino employee at 1:56 p.m. The camera recorded Muriel as she won a jackpot at the machine she had been playing at 2:51 p.m., and minutes later the camera recorded White serving Muriel a beer at 2:53 p.m. At 2:55 p.m., the machine Muriel had been playing was re-set. Muriel cashed out her money from the machine and walked down the aisle to another machine, where she pulled up a chair, sat down, and began playing. White and his wife conversed twice as Muriel gambled, and White changed machines. At 3:37 p.m., Muriel fainted or passed out, striking her head as she plummeted to the floor. Casino personnel attended Muriel, placed *715 her in a wheelchair, and gave her a cloth and ice for her head. White, who did not see his wife fall, attended to Muriel briefly, and then went to get their car. Muriel refused the casino's offer to call an ambulance, but she was supervised by casino employees while they waited for White to return with their car. After the accident Muriel was conversational, alert, and able to hold the ice pack on her head without assistance.
¶ 2. White and Muriel went home, where Muriel exited the vehicle, traversed the house, and changed into her nightgown and slippers, all without assistance from her husband. White last recalls speaking to his wife that evening around 5:30 p.m. At 7:00 a.m. the next morning, White went to Muriel's room to wake her and found that the door was locked. Using a screwdriver to open the door, White discovered Muriel's body in her bed. The coroner's report estimated that Muriel passed away between 11:00 p.m. September 5 and 1:00 a.m. September 6. The coroner's report also reflects that Muriel died as a result of aspirating on her own vomit. White did not grant permission for an autopsy, however a toxicology report indicted the presence of both alcohol and Valium. Furthermore, a post-mortem brain scan revealed that Muriel had normal brain functions, and that she did not have any fractures in her skull.

PROCEDURAL HISTORY
¶ 3. Alfred White, as executor of his wife's estate, filed a civil action against Rainbow on July 19, 2002. On June 13, 2003, Rainbow filed its motion for summary judgment. White did not respond to the motion for summary judgment in a timely manner, and the trial court struck White's response.[1] The trial court granted Rainbow's motion for summary judgment, and the case was dismissed on August 4, 2003. It is from this dismissal that White now appeals. Contrary to Mississippi Rules of Appellate Procedure Rule 28(a)(3), the appellant's brief does not include a statement of issues presented for review by this Court.[2] Despite this non-conformity, this Court will address the issues gleaned from the arguments of the brief as follows: (1) whether the trial court erred in granting summary judgment regarding White's claims, which stem from Mississippi Code Annotated Sections 67-3-53(b) (Rev.2001), 67-3-73, (Rev.2001) and 67-1-83(1) (Rev.2001); and (2) whether the trial court erred in granting summary judgment regarding White's claims that Rainbow failed to provide reasonable medical care and assistance.

STANDARD OF REVIEW
¶ 4. This Court's standard of review for a motion for summary judgment is well-settled, and is stated as follows:
This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine *716 issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt.
Williamson ex rel. Williamson v. Keith, 786 So.2d 390, 393 (¶ 10) (Miss.2001).

I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT ON CLAIMS BASED UPON MISSISSIPPI CODE ANNOTATED SECTIONS 67-3-53(b), 67-3-73, AND SECTION 67-1-83(1)?
¶ 5. Three Mississippi statutes apply to the case at bar, all addressing the illegality of selling alcohol to particular people. Section 67-3-53(b) of the Mississippi Code provides in pertinent part as follows:
it shall be unlawful for the holder of a permit authorizing the sale of beer or light wine or for the employee of the holder of such a permit ... [t]o sell, give or furnish any beer or light wine to any person visibly or noticeably intoxicated, or to any insane person, or to any habitual drunkard, or to any person under the age of twenty-one (21) years.
¶ 6. The Mississippi Supreme Court reviewed this statute in Munford v. Peterson, 368 So.2d 213 (Miss.1979). In Munford, the parents and brothers of a minor passenger who died as a result of an automobile accident brought a wrongful death suit against the driver and the seller of the alcoholic beverages. A verdict was entered against the seller, and the seller appealed. The supreme court determined that section 67-3-53(b) was adopted for the protection of the general public, including persons such as the minor decedent. The court also held that Munford was guilty of negligence per se in selling alcoholic beverages to the minors, and if that negligence proximately caused or contributed to the minor's death and injury, the plaintiffs were entitled to recover. "The general public was held to be a protected class and decedent Peterson, a minor, was a member of that protected class." Cuevas v. Royal D'Iberville Hotel, 498 So.2d 346, 348 (Miss.1986) (discussing Munford, 368 So.2d 213).
¶ 7. Also applicable in this case is Mississippi Code Annotated Section 67-1-83(1) (Rev.2001), which provides:
(1) It shall be unlawful for any permittee or other person to sell or furnish any alcoholic beverage to any person who is known to be insane or mentally defective, or to any person who is visibly intoxicated, or to any person who is known to habitually drink alcoholic beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit-forming drugs....
¶ 8. This statute, along with 67-3-53(b), was reviewed by the Mississippi Supreme Court in Cuevas v. Royal D'Iberville Hotel, 498 So.2d 346 (Miss.1986). In Cuevas, a hotel guest was injured when she fell over a railing and plunged thirty feet to the lobby floor. Prior to falling, Cuevas had been consuming intoxicating beverages in the hotel lounge. Cuevas argued that she was visibly intoxicated; that she was served intoxicating beverages in the hotel lounge; that her inebriated state contributed to the fall and her injuries; and that the hotel was negligent for violating *717 Mississippi Code Annotated Section 67-1-83(1).
¶ 9. The supreme court reiterated its prior holding in Munford "that the Mississippi law, which prohibits the sale of beer or wine to a minor, was adopted for the protection of the general public and that [the decedent in Munford] was a member of the protected class." Cuevas, 498 So.2d at 348. Notably, in Cuevas the court declined to extend this protection to an adult who "voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself." Id. The court further held that such a person is excluded from the protected class as articulated in Munford. Id.
¶ 10. The Mississippi Legislature adopted section 67-3-73 in 1987, after the supreme court's holding in Cuevas. This section further provides:
(1) The Mississippi Legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
(2) Notwithstanding any other law to the contrary, no holder of an alcoholic beverage, beer or light wine permit, or any agent or employee of such holder, who lawfully sells or serves intoxicating beverages to a person who may lawfully purchase such intoxicating beverages, shall be liable to such person or to any other person or to the estate, or survivors of either, for any injury suffered off the licensed premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold ....
(4) The limitation of liability provided by this section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol, or to any holder of an alcoholic beverage, beer or light wine permit, or any agent or employee of such holder when it is shown that the person making a purchase of an alcoholic beverage was at the time of purchase visibly intoxicated.
Miss.Code. Ann. Sec. 67-3-73 (Rev.2001).
¶ 11. This statute was reviewed in Bridges v. Park Place Entertainment, 860 So.2d 811 (Miss.2003). In Bridges, a casino patron became intoxicated at the casino while he was gambling. Bridges subsequently left the casino, and as his wife was driving him home, Bridges attempted to exit the car. Mrs. Bridges pulled to the side of the road, where Mr. Bridges exited the vehicle, walked into the highway, and was struck by a car. The supreme court re-affirmed its decision in Cuevas, stating:
In adopting Miss.Code Ann. § 67-3-73, the Legislature had the opportunity to clearly state whether adults who voluntarily consume alcoholic beverages and then injure themselves as a result of that intoxication were members of the protected class thus enabling them to bring suit against vendors who sold or furnished them the alcoholic beverages. However, the Legislature did not take this opportunity; therefore, this Court's holding in Cuevas clearly applies to the present case.
Bridges, 860 So.2d at ¶ 16.
¶ 12. It is clear that under Bridges and Cuevas, if Muriel voluntarily consumed intoxicants and subsequently injured herself due to her intoxicated condition, she is not a member of the class protected by the statute. Thus, the question becomes whether there exists an issue of fact as to *718 the voluntariness of Muriel's intoxication. If a genuine issue of material fact exists, summary judgment was improper. This Court has reviewed the record extensively in this matter, and it is clear that on September 5, Muriel was served beverages by the Rainbow staff a minimum of six times. It is also clear that Mr. White served his wife a minimum of six beverages while she gambled. There is no indication that Muriel consumed the beverages either under duress, or involuntarily. There is nothing in the record to create a question of fact as to whether Muriel was involuntarily intoxicated. Thus, Muriel is clearly excluded from the class of citizens this legislation was intended to protect.
¶ 13. Furthermore, from this Court's review of the record, there is also no indication that Muriel was visibly intoxicated, as indicated in sections 67-1-83(1), 67-3-53, and 67-3-73. The transcripts of the casino's security cameras evidence that while she drank and gambled, Muriel was ambulatory and conversational; Muriel visited the restroom a number of times, alternated her gambling among several slot machines, and conversed with her husband throughout the day. Additionally, there is nothing in the record to raise a question of fact as to the possibility that Muriel was an habitual drunkard, or known to be insane or mentally defective, as indicated in sections 67-1-83(1) and 67-3-53(b). Accordingly, summary judgment on this issue was proper.

II. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT REGARDING WHITE'S CLAIMS THAT RAINBOW FAILED TO PROVIDE REASONABLE MEDICAL CARE AND ASSISTANCE?
¶ 14. White argues that the trial court erred in granting summary judgment because the casino personnel rendered little, if any assistance; the personnel failed to call for an ambulance or dial 911; and Rainbow shirked it's legal and affirmative duty to Muriel by not requiring her to seek medical attention, despite her refusal to seek such medical attention.
¶ 15. Unless there is an exception, the analysis of premises liability involves three steps, as described in Little ex rel. Little v. Bell, 719 So.2d 757 (Miss. 1998). First the status of the injured person must be determined as either invitee, licensee, or trespasser. Id. at 760. The next step is to assess, based on the injured party's status, what duty the landowner/business operator owes to them. Id. The final step is to determine whether the landowner/business operator breached the duty owed to the injured party. Id. As a casino patron, Muriel occupied the position of a business invitee. Breaux v. Grand Casinos of Mississippi  Gulfport, 854 So.2d 1093, 1098 (¶ 10) (Miss.Ct.App.2003) (citing Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 37 (Miss.1989)). It is well-settled law in this state that White had the burden to show the following by a preponderance of the evidence: (a) a definable duty on the casino's part, (b) a breach of that duty, (c) an injury to Muriel proximately caused by that breach, and (d) actual loss or damage arising out of the injury. Carpenter v. Nobile, 620 So.2d 961, 964 (Miss.1993).
¶ 16. Mississippi law is scant on the duty of a casino to render aid to an invitee injured on casino property. In the case of Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413 (Miss.1988), the Mississippi Supreme Court addressed the issue of assisting an injured patron. In Grisham, Mabeline Grisham, a bar patron, was injured in the parking lot as she was exiting the V.F.W. post. Mabeline's assailant was also a patron at the post. Mabeline *719 sued the V.F.W. for injuries sustained in the attack and for injuries sustained as a result of the V.F.W. employees' failure to render assistance to Mabeline. The court opined:
[w]hen the record is viewed in the light most favorable to Mabeline, it indicates that the V.F.W. officials were asked to help her after the attack, and that they replied they were "too tied up" to help. We are of the opinion that the V.F.W. officials had an affirmative duty to aid Mabeline once they learned that she had been injured on V.F.W. premises. Compare, Hogan v. Cunningham, 252 Miss. 216, 226, 172 So.2d 408, 413 (1965) (driver involved in collision was negligent in failing to render such aid and assistance as he could to injured party). This duty arose out of the relationship between Mabeline and the V.F.W.
Grisham, 519 So.2d at 417. The court did not discuss the relationship between Mabeline and the V.F.W. in light of the licensee/invitee/trespasser distinctions. However, previously in the opinion, the court determined that the V.F.W. owed Mabe-line the duty to "exercise reasonable care to protect her from reasonably forseeable injury at the hands of another." Id. at 417. It is unclear to this Court if the V.F.W's duty to aid Mabeline after the attack stems from a relationship which is applicable in the case sub judice. For example, did the duty to aid stem from the invitee/landowner relationship or did the duty to aid stem from the breach of the duty which required the V.F.W. to protect her from reasonably forseeable injury at the hands of another patron? The extent to which the V.F.W. was obligated to aid Mabeline is also unclear.
¶ 17. However, in the case sub judice, it is clear that, unlike in Grisham, Rainbow offered assistance to Muriel. The record reflects that she was attended by casino staff, including Patricia Brady. Brady was on duty the day of the accident as a security shift supervisor. Brady had undergone training from the Red Cross and was certified and qualified to render basic first aid services, and Brady attended and monitored Muriel after her fall. Brady suggested that Muriel seek the attention of a physician, to which Muriel responded that she did not think the cut over her eye was that serious. Brady further offered to summon an ambulance, however Muriel refused that suggestion as well.
¶ 18. As of this date, Mississippi has not adopted Section 314A of the Restatement of Torts, Second, which provides that a possessor of land who holds the land open to the public has the following duties to members of the public who enter the land in response to the possessor's invitation: "(a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." It is clear, even if Mississippi followed this section of the Restatement, Rainbow rendered first aid to Muriel until she insisted on leaving the casino and effectively surrendered her care to her own discretion and to the judgment of her husband.
¶ 19. This Court, while saddened by the loss of Muriel's life, cannot, however, stretch the duty of Rainbow, and other landowners and business operators, to include a duty which our supreme court and Legislature have not deemed proper to establish. Accordingly, summary judgment on the issues presented in this appeal is affirmed.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*720 KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] White does not appeal the trial court's decision to strike his response to the motion for summary judgement.
[2] MRAP 28(a)(3) provides "[a] statement shall identify the issues presented for review. No separate assignment of errors shall be filed. Each issue presented for review shall be separately numbered in the statement. No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified."