# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CT-00215-SCT

*CONNIE HAWKINS, INDIVIDUALLY AND ON
BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF GEORGE LEITH
HAWKINS, III, DECEASED*

*v.*

*HECK YEA QUARTER HORSES, LLC, WALLACE
HECK d/b/a HECK YEA QUARTER HORSES, LLC
AND BRUCE HORN*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/13/2016 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | KEITH D. OBERT |
| | JOHN HUNTER STEVENS |
| | ROBERT P. THOMPSON |
| | PAUL PACIFIC BLAKE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN HUNTER STEVENS |
| ATTORNEYS FOR APPELLEES: | PAUL PACIFIC BLAKE |
| | ROBERT P. THOMPSON |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 08/02/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     On June 19, 2013, George "Leith" Hawkins (Hawkins), suffered a stroke while working at Heck Yea Quarter Horses, LLC (Heck Yea); he died days later. Connie Hawkins (Connie), George Hawkins's widow, sued Heck Yea and other defendants for wrongful death. The Circuit Court of the First Judicial District of Hinds County granted summary

judgment and the Mississippi Court of Appeals affirmed. *Hawkins v. Heck Yea Quarter Horses, LLC*, 2016 WL 9402885 (Miss. Ct. App. Jan. 13, 2016). We granted Connie's petition for a writ of *certiorari* to address whether the trial court and the Mississippi Court of Appeals erred in failing to take into account affidavits which create genuine issues of material fact with regard to the care Hawkins received at Heck Yea. Because we find summary judgment to have been proper, and the Mississippi Court of Appeals' analysis on the matter to have been correct, we affirm the judgment of the Circuit Court of the First Judicial District of Hinds County and the ruling by the Court of the Appeals.

### FACTS AND PROCEDURAL HISTORY

¶2. On June 19, 2013, Bruce Horn–the manager of Heck Yea Quarter Horses–hired Hawkins to wash a wooden fence. After lunch, Hawkins complained of feeling ill. Horn stated in his deposition that he offered to call an ambulance, but Hawkins declined. Horn said he then transported Hawkins to a barn on the property in the bucket of a tractor's front-end loader and "[s]at him down in the shade in the rocking chair on . . . the porch of the barn, and got him a cold drink." Horn stated that he then asked Hawkins a second time whether he wanted an ambulance, but that Hawkins again refused. According to Horn, Hawkins also declined his offer to drive him home, recounting that Hawkins said "he was feeling better; he'd be fine."

¶3. Horn testified in his deposition that Hawkins left Heck Yea between 3:00 p.m. and 3:30 p.m. However, in a signed affidavit, William "Kevin" Thompson (a friend of Hawkins's) said that "sometime near the end of the lunch hour" on June 19, 2013, he "was

traveling north on Interstate 55 near the Hinds/Copiah county line" and recognized Hawkins and his vehicle proceeding "in the southbound lane at approximately 10 mph." According to Thompson, "[t]raffic was backed up all around him and I thought at the time someone was going to get hurt." Although he did nothing to notify police or Connie Hawkins, or otherwise attempt to assist his friend, Thompson's affidavit expressed that he "knew something was terribly wrong with [Hawkins]."

¶4.     Connie Hawkins stated in her deposition that she arrived home some time between 4:30 p.m. and 4:50 p.m. and found Hawkins's soaking-wet clothes on the kitchen floor. She then found Hawkins in the bed with the covers pulled over his head. Hawkins told his wife that he had passed out at Heck Yea. Connie stated that she asked why nobody had called her, but "never got an answer to that." Hawkins asked his wife to rub the back of his neck, which she did. Hawkins then requested a Tylenol, for which his wife went to his truck; when she returned, Hawkins had "gotten to the couch" and was "shaking and trembling and couldn't say anything." According to Connie, Hawkins then "fell off the couch, and from then on he never said another word and he was just shaking; all over his body was shaking and jerking."

¶5.     Connie reported her husband's distress to Emergency Medical Services at 6:44 p.m. Hawkins died in the hospital on June 28, 2013, from a stroke.

¶6.     Connie sued Heck Yea, Wallace Heck, Bruce Horn (Heck Yea Defendants) and five John Does for wrongful death. She alleged that Hawkins had been left alone "to tend to the fence, at which time he, due to the extreme heat, passed out in the field." She continued that Hawkins's coworkers "loaded his body into the front bucket of a tractor and drove him back

to the barn, where they attempted to wake him by hosing him down with a garden hose." According to the complaint, Hawkins regained consciousness "but was incoherent and unsteady." According to the complaint, Heck Yea employees told Hawkins "to get in his vehicle and drive home," which he did.

¶7.    In her deposition, Connie admitted to receiving the information about what happened to her husband at Heck Yea from Danny Martin, who "is a farmer and he cuts and bales hay for different people." Martin had not witnessed the events of the June 19, 2013. According to Connie, "Bruce Horn and his crew" had told Martin about Hawkins's incident.

¶8.    Heck Yea moved for summary judgment, arguing that Connie's allegations were "based entirely on inadmissible hearsay and were unsupported by any admissible evidence." Heck Yea argued that Horn's deposition testimony proved it had not been negligent.

¶9.    Connie Hawkins responded that Horn's deposition testimony had been refuted by admissible evidence in the form of an affidavit from Brad Goodman. Goodman stated in the following in an affidavit:

> I had previously done tree service work for Heck Yea . . . . I was aware that George Hawkins was doing some work for Bruce Horn and Heck Yea and became aware that George Hawkins had been admitted to the hospital on or about June 19, 2013, and was in serious condition.
>
> Within a day of this occurrence, I called Bruce Horn and told him that George Hawkins was in the hospital in bad shape and further asked him what had happened. Bruce Horn responded, "initially, I thought he was going to die out there." He further stated, "I guess 'Leith' got too hot and passed out. We gave him some water and assistance, but I sure thought he was going to leave here today."
>
> I have personal knowledge of this conversation and know that this was Bruce Horn, as he identified himself on the telephone and I have his number in my

4

telephone and recognized his voice. On at least two occasions, Bruce Horn stated that he knew "Leith" was in a serious medical state and he thought he was going to die. He never made any mention of contacting or calling for medical assistance, 911, or even calling George Hawkins'[s] wife, Connie Hawkins, about what had occurred on June 19, 2013, while George Leith Hawkins, III, was doing work for Heck Yea and Bruce Horn.

Connie argued that "[t]his admissible evidence, admission against interest, from Mr. Goodman creates a factual dispute, making summary judgment improper." *See* Miss. R. Evid. 801(d)(2). In response, Horn denied ever having spoken to Goodman, saying he had "never heard of him."

¶10.    Connie also offered an affidavit from Dr. Tiffany Scarff, a neurologist, in response to Heck Yea's motion for summary judgment. In Dr. Scarff's opinion, Heck Yea had acted unreasonably by failing to obtain immediate medical care in response to Hawkins's symptoms. Dr. Scarff provided that, "had Mr. Hawkins obtained adequate medical treatment within at least 4.5 hours before he exhibited signs of significant medical distress at Heck Yea Farm, I believe he would have had a reasonable or much higher chance of survival with less injury from the stroke." She concluded that "the failure of Mr. Horn to give appropriate aid was a contributing and causative factor in the death of George Hawkins."

¶11.    The Circuit Court of the First Judicial District of Hinds County granted summary judgment, finding the good-samaritan statute, Mississippi Code Section 73-25-37(1),[1] to have

---

[1] Mississippi Code Section 73-25-37(1) states:

No duly licensed, practicing physician . . . or any other person who, in good faith and in the exercise of reasonable care, renders emergency care to any injured person at the scene of an emergency, or in transporting the injured person to a point where medical assistance can be reasonably expected, shall be liable for any civil damages to the injured person as a result of any acts

5

been dispositive. The court held that "no admissible evidence has been presented to create a genuine issue of material fact concerning the exercise of reasonable care (or alleged lack thereof) offered by Defendants to the decedent when he fell ill" and that the only "admissible evidence consistently provides that the decedent refused" the offer of an ambulance.

¶12. The Mississippi Court of Appeals affirmed. *Hawkins*, 2016 WL 9402885, at *2. It agreed with the circuit court that Martin's statements, to which Connie referred in her deposition, "constituted inadmissible double hearsay, since Hawkins merely repeated Martin's recollection of Horn's statements." *Id.* at *3. Connie did not depose or subpoena Martin to substantiate her claims. *Id.* The appeals court held that the "good-samaritan statute is not dispositive where the principles of negligence may also apply." *Id.* at *2 (citing *Ladner v. Holleman*, 90 So. 3d 655, 658 (Miss. Ct. App. 2012)). However, it held that Connie did not support her claim because she "failed to establish that Heck Yea's negligence was the proximate cause of George's death . . . ." *Hawkins*, 2016 WL 9402885, at *3. "[E]ven under the general principles of negligence," according to the Court of Appeals, "Heck Yea did not breach its duty to George [Hawkins]." *Id.*

¶13. Connie petitioned this Court for a writ of *certiorari,* arguing that the trial court and the Court of Appeals overlooked Goodman's affidavit. She claims that Goodman's affidavit, along with Dr. Scarff's affidavit, created a genuine issue of material fact with regard to Heck

---

committed in good faith and in the exercise of reasonable care or omissions in good faith and in the exercise of reasonable care by such persons in rendering the emergency care to the injured person.

Miss. Code Ann. § 73-25-37(1) (Rev. 2017).

6

Yea's care of Hawkins following his stroke. With this evidence, Connie asserts that a jury question exists as to the standard of care the defendants provided. After due consideration, we granted her petition to address this sole issue.

## STANDARD OF REVIEW

¶14. "When reviewing a trial court's grant or denial of motion for summary judgment, this court applies a *de novo* standard of review." **Whitaker v. Limeco Corp.**, 32 So. 3d 429, 433-34 (Miss. 2010).

¶15. "The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied." **Leslie v. City of Biloxi**, 758 So. 2d 430, 431-32 (Miss. 2000) (quotations omitted).

## ANALYSIS

¶16. Connie requested this Court grant certiorari to reverse the Court of Appeals' decision, which she claims is in direct conflict with Mississippi law and the overwhelming weight of the evidence. We granted her petition and agreed to examine whether the trial court failed to consider the Goodman affidavit, and whether the affidavit revealed issues of material fact which should have prevented the trial court from granting summary judgment. After a thorough review, we find that the Court of Appeals and the trial court properly concluded that the affidavit does nothing to support an inference of negligence, making summary judgment on the matter appropriate. Therefore, we affirm the decisions of both courts.

**Whether the trial court erred in its failure to consider issues of fact presented by the plaintiff's affidavits, making summary judgment improper.**

¶17. Connie focuses her petition on the trial court's and the Court of Appeals' failure to rely upon the sworn affidavit of Brad Goodman in their rulings. She claims that Goodman's testimony includes statements admissible at trial that create a factual dispute as to whether Bruce Horn provided Hawkins reasonable care at the Heck Yea ranch. Noting that Horn's deposition supported the argument that the defendants did not breach a duty on general negligence principles, Connie claims that the Goodman affidavit indicates that Horn was aware of the severity of Hawkins's injuries and the likelihood that he was not capable of refusing treatment. As a result, the affidavit serves to contradict Horn's testimony, creating a genuine dispute to be evaluated by the factfinder.

¶18. The defendants disagree. Without addressing the applicability of the Goodman affidavit, the defendants argue that the Court of Appeals correctly found that Connie failed to establish the two essential elements of her negligence claim: breach of a duty owed and proximate cause of the injury endured. Without these elements, Connie's claim could not survive summary judgment.

¶19. The trial court and the Court of Appeals reviewed this issue in their respective rulings, finding that Connie failed to carry her burden to prove that the defendants were negligent. The trial court explained that, through Mississippi Code Section 73-25-37, the defendants acted reasonably in rendering emergency care to Hawkins and could not be held liable for the fatal result of his injuries. Noting that Connie waited to request medical support until two

8

hours after she arrived home, the trial court determined that Horn's decision to accept Hawkins's refusal of an ambulance or medical assistance was not unreasonable and did not create an issue of fact sufficient to survive summary judgment.

¶20. On appeal, the Court of Appeals agreed, holding that the defendants fulfilled their duty by rendering first aid to Hawkins, and that such a duty ended when Hawkins left the ranch and Connie assumed care for her husband. *Hawkins*, 2016 WL 9402885, at *3 (Miss. Jan. 13, 2016). Citing *Estate of White ex rel. White v. Rainbow Casino-Vicksburg Partnership*, the court recognized that the defendants had a duty to render reasonable care, though "that duty abates when a competent patron refuses medical aid, and surrenders [his] care to [his] own discretion and to the judgment of [his] spouse." *Id.* (citing *Estate of White ex rel. White v. Rainbow Casino-Vicksburg P'ship*, 910 So. 2d 713, 719 (Miss. Ct. App. 2005)). With no admissible evidence indicating that Hawkins was incompetent or incoherent, the Court of Appeals determined that the defendants acted reasonably in providing Hawkins aid and then allowing him to drive home. Applying the general principles of negligence, the court held that "Heck Yea did not breach its duty to George." *Id.*

¶21. On *certiorari*, Connie seeks to establish that the defendant's negligence–through a breach of the defendant's duty of care–was the proximate cause of Hawkins's death. Applied to the facts at issue, Connie must show that the defendant's choice to accept Hawkins's refusals of an ambulance were both unreasonable and resulted in Hawkins's fatal injuries. *See Ladner v. Holleman*, 90 So. 3d 655 (Miss. Ct. App. 2012) (holding that when

9

a layman renders aid to an injured person, that layman has a duty to render the aid by using reasonable care.)

¶22.    To carry this burden at the trial court and at the Court of Appeals, Connie used the testimony of several witnesses who were not at the scene of Hawkins's injury and were not present to observe the care rendered by Horn.  Here, Connie again presents the affidavits of Brad Goodman and Dr. Tiffany Scarff as impeachment testimony and expert testimony, respectively.  Connie claims that, when read together in light of Horn's deposition, the affidavits show that there is a genuine issue of material fact as to the degree of distress Hawkins was in when the defendants rendered care.  While Horn described Hawkins as "fine . . . feeling better," Connie claims his deposition testimony is contradicted by Goodman's account of a conversation in which Horn later admitted Hawkins "was in a serious medical state and he thought he was going to die."  Further, Connie presents Dr. Scarff's affidavit to prove that such an admission against interest raises questions about the adequacy of the care rendered and Hawkins's competence to refuse such care.

¶23.    We disagree.  When a property owner voluntarily renders care to an injured party on his premises, he owes her a duty of reasonable care in that treatment.  *Ladner*, 90 So. 3d at 660.  Reasonableness is a question of fact, and although the reasonableness of the aid rendered generally is a question for the jury, the trial court properly granted summary judgment.  Applying the good samaritan statute, the trial court found that Horn's offers of medical assistance and his acceptance of Hawkins's refusal of those offers fulfilled any duties owed to the decedent. Likewise, the Court of Appeals properly determined that the

10

defendants' duty to render care abated when Hawkins coherently refused the medical aid offered and surrendered his care to his spouse and himself. *Hawkins*, 2016 WL 9402885, at *3 (Miss. Jan. 13, 2016) (citing *Estate of White ex rel. White*, 910 So. 2d 713, 719 (Miss. Ct. App. 2005)).

¶24.    Using the affidavits for support, Connie argues that Horn was aware that Hawkins was not capable of refusing treatment, and therefore it was unreasonable for him to send Hawkins home without medical assistance. Citing Dr. Scarff's affidavit, Connie claims that had Horn instead called an ambulance, Hawkins's injuries would have been reduced, and he likely would have survived. But any uncertainty regarding Hawkins's capacity to refuse offers of reasonable care does not render summary judgment inappropriate; this is not evidence that Horn failed to exercise reasonable care in rendering aid. Horn treated Hawkins by ushering him into the shade, providing him a seat, water, and an opportunity to rest. He twice offered him medical transport, and a third time offered him an alternative means to get home. Hawkins refused, said he was fine, and opted to drive himself home. Notably, Connie waited two hours after arriving home and tending Hawkins before she determined an ambulance was necessary. Both the Court of Appeals and the trial court found this problematic. We find that, considering the totality of the circumstances, including Connie's lack of urgency as it related to Hawkins's condition, the defendants did not unreasonably provide treatment and did not breach any duty owed to Hawkins. As a result, Connie failed to provide this crucial element of negligence, and therefore, we need not discuss causation.

## CONCLUSION

11

¶25.    Connie Hawkins has failed to establish that the defendants' actions in rendering aid to her husband were both negligent and unreasonable, and that such negligence was the proximate cause of his fatal injuries.  As a result, we affirm the decision of the Mississippi Court of Appeals as well as the judgment of the Circuit Court of the First Judicial District of Hinds County.

¶26.    **AFFIRMED.**

**RANDOLPH, P.J., COLEMAN, MAXWELL AND CHAMBERLIN, JJ., CONCUR.  KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KING, J.  ISHEE, J., NOT PARTICIPATING.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶27.    The Circuit Court of the First Judicial District of Hinds County and the Mississippi Court of Appeals erred in failing to take into account affidavits which create genuine issues of material fact with regard to the care George "Leith" Hawkins received at Heck Yea Quarter Horses, LLC, in the aftermath of his stroke. Accordingly, summary judgment was improper. Because I would reverse the judgment of the circuit court as well as the judgment of the appeals court and remand the case to the circuit court for further proceedings, I respectfully dissent.

¶28.    As the majority recognizes, "[t]he evidence must be viewed in the light most favorable to the party against whom the motion has been made." *Leslie v. City of Biloxi*, 758 So. 2d 430, 431-32 (Miss. 2000) (quoting *Miss. Dep't of Wildlife, Fisheries, & Parks v. Miss. Wildlife Enf't Officers' Ass'n, Inc.*, 740 So. 2d 925, 930 (Miss. 1999)).

¶29.    Rule 56 of the Mississippi Rules of Civil  Procedure, in relevant part, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

M.R.C.P. 56(c). Rule 801(d)(2)(A) of the Mississippi Rules of Evidence states, in relevant part: " [a] statement . . . is not hearsay . . ." if "[t]he statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity . . . ." Miss. R. Evid. 801(d)(2)(A).[2]

¶30.    Both the circuit court and the Court of Appeals found that no admissible evidence created a genuine issue of material fact concerning the care given Hawkins at Heck Yea. But Goodman's affidavit contains statements allegedly made by Horn to Goodman, which were offered by Connie Hawkins in response to the opposing party's motion for summary judgment. Horn's statement is not hearsay under Mississippi Rule of Evidence 801(d)(2)(A).

¶31.    Horn claimed in his own deposition to have sat Hawkins down in the shade, brought him a cold drink, and offered to call an ambulance. According to Horn, Hawkins refused the

---

[2] The Advisory Committee Notes to Mississippi Rule of Evidence 801(d)(2) explain that the term "admissions against interest," as referenced in Connie Hawkins's papers, has been removed from the current version of the rule:

Statements falling under the hearsay exclusion provided by Rule 801(d)(2) are no longer referred to as "admissions" in the title to the subdivision. The term "admissions" is confusing because not all statements covered by the exclusion are admissions in the colloquial sense—a statement can be within the exclusion even if it "admitted" nothing and was not against the party's interest when made. The term "admissions" also raises confusion in comparison with the Rule 804(b)(3) exception for declarations against interest. No change in application of the exclusion is intended.

Miss. R. Evid. 801(d)(2) cmt.

latter. Goodman's account is consistent in that Horn told him that he had given Hawkins "water and assistance." But Goodman, whom Horn claimed not to know, also related in his affidavit that Horn had told him that Hawkins "was in a serious medical state," that Hawkins had "passed out" and that he "'thought he was going to die out there.'" According to Goodman, Horn continued that he "'sure thought [Hawkins] was going to leave here today.' . . . On at least two occasions, Bruce Horn stated that he knew 'Leith' was in a serious medical state and he thought he was going to die."

¶32. In addition to Horn's statements to Goodman, Connie Hawkins responded to Heck Yea's motion for summary judgment with an affidavit from Dr. Tiffany Scarff, in which she opined that, "had Mr. Hawkins obtained adequate medical treatment within at least 4.5 hours before he exhibited signs of significant medical distress at Heck Yea Farm, I believe he would have had a reasonable or much higher chance of survival with less injury from the stroke." Connie Hawkins also presented the affidavit from her deceased husband's friend, William "Kevin" Thompson, who stated that, "sometime near the end of the lunch hour" on June 19, 2013, he (Thompson) had been "traveling north on Interstate 55 near the Hinds/Copiah [C]ounty line." Thompson recognized Hawkins and his vehicle proceeding "in the southbound lane at approximately 10 mph." According to Thompson, "[t]raffic was backed up all around [Hawkins] and I thought at the time someone was going to get hurt." Thompson "knew something was terribly wrong with [Hawkins]."

¶33. Horn's statements to Goodman, Dr. Scarff's affidavit, and Thompson's affidavit create genuine issues of material fact, specifically with regard to Hawkins's ability to refuse medical

care on June 19, 2013. The Mississippi Court of Appeals has held that a casino was not liable to the estate of a patron who, after having fainted and struck her head at the casino, died at home later that evening "as a result of aspirating on her own vomit." *Estate of White ex rel. White v Rainbow Casino-Vicksburg P'ship, L.P.*, 910 So. 2d 713, 719, 714 (Miss Ct. App. 2005). The court observed that casino staff had provided first aid services and that the patron had refused their offer to summon an ambulance. *Id.* at 719.

¶34.    In a case in which a patron of a V.F.W. post was assaulted and injured on the premises and V.F.W. officials refused to help because they claimed to have been "'too tied up'" at the time, this Court observed that premises owners have an affirmative duty to aid an injured patron once the premises owners learn that the patron was injured on the premises. *Grisham v. John Q. Long VFW Post, No. 4057, Inc.*, 519 So. 2d 413, 417 (Miss. 1988) ("We are of the opinion that the V.F.W. officials had an affirmative duty to aid Mabeline once they learned she had been injured on V.F.W. premises."). Ultimately, the Court affirmed the grant of summary judgment in favor of the V.F.W. because, while the patron claimed "that the V.F.W. should have provided better lighting, hired security guards, and maintained a less violent atmosphere, [the patron] ha[d] made absolutely no showing that any of these omissions was the proximate cause of the attack." *Id.*

¶35.    In *White*, a competent patron refused medical care. *White*, 910 So. 2d at 715. And in *Grisham*, this Court observed that the V.F.W. officials had an affirmative duty to provide assistance to the patron assaulted and injured on their premises. *Grisham*, 519 So. 2d at 417. Here, affidavits from Goodman and Dr. Scarff present genuine issues of material fact with

15

regard to the adequacy of the care Horn purportedly provided Hawkins and whether, if Hawkins did refuse medical care, he was capable of doing so.

¶36. The majority finds nothing in the record to a create a genuine issue of material fact with regard to Hawkins's ability to refuse medical care. Yet Dr. Scarff said in her affidavit that Hawkins would have had a significantly higher chance of surviving had he received medical care within 4.5 hours of suffering the heat stroke. And Goodman stated that Horn had told him that he (Horn) knew that Hawkins was in a serious medical state:

> I called Bruce Horn and told him that George Hawkins was in the hospital in bad shape and further asked him what had happened. Bruce Horn responded, "initially, I thought he was going to die out there." He further stated, "I guess 'Leith' got too hot and passed out. We gave him some water and assistance, but I sure thought he was going to leave here today."

Goodman's statement about what Horn had told him conflicted with Horn's deposition testimony that Hawkins had not passed out. Horn had provided deposition testimony that, had Hawkins passed out, he would have called an ambulance.

¶37. Moreover, the existence of genuine issues of material fact is even more apparent in light of Thompson's affidavit. Thompson, a friend of Hawkins's, said that he observed Hawkins driving in an apparent state of distress at ten miles-per-hour on Interstate 55 on June 19, 2013, the day of Hawkins's heat stroke. Thompson said also that "[t]raffic was backed up all around [Hawkins's vehicle] and I thought at the time someone was going to get hurt." Thompson "knew something was terribly wrong with [Hawkins]." Thompson's observations differed from Horn's deposition testimony, which emphasized Hawkins's purported lucidity. Furthermore, Thompson said that he had observed Hawkins on Interstate 55 "sometime near

16

the end of the lunch hour," a significant departure from Horn's deposition testimony that Hawkins had left Heck Yea between 3:00 p.m. and 3:30 p.m. on June 19, 2013.

¶38.  The majority, as did the circuit court and the appeals court, ignores the contrary testimony and, instead, accepts Horn's statements as true and lauds the treatment Horn claims to have provided Hawkins: "Horn treated Hawkins by ushering him into shade, providing him a seat, water, and an opportunity to rest. He twice offered him medical transport, and a third time offered him an alternative means to get home. Hawkins refused, said he was fine, and opted to drive himself home." Maj. Op. ¶ 24.  I do not fault Horn for having provided "water and assistance" to Hawkins, and, if his version of events is worthy of belief, for offering Hawkins an ambulance or a means of transportation home. But the veracity of Horn's statement is lessened significantly by Horn's own deposition testimony that, had Hawkins passed out, he would have called an ambulance. Accordingly to Goodman, Horn told him, contrary to his (Horn's) deposition testimony, that Hawkins *had* passed out, that he had "thought [Hawkins] was going to die out there," and that he had thought Hawkins was "going to leave here today." The disparity in Horn's deposition testimony and in Goodman's account of what Horn told him altogether calls into question Horn's account, as does Thompson's observation of Hawkins's hazardous driving on Interstate 55 on June 19, 2013. Had the necessary medical attention been provided in a timely manner, according to Dr. Scarff's affidavit, Hawkins would have had a significantly higher chance of survival.

¶39.  Horn's deposition testimony and what Goodman said Horn told him—and, indeed, Thompson's and Dr. Scarff's affidavits—could not be more indicative of the existence of

17

genuine issues of material fact which should be resolved, not by this Court, but by the factfinder. I therefore decline to join my learned colleagues in the majority in affirming the decisions of the Circuit Court of the First Judicial District of Hinds County and the Mississippi Court of Appeals.

**WALLER, C.J., AND KING, J., JOIN THIS OPINION.**