KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶ 27. The Circuit Court of the First Judicial District of Hinds County and the Mississippi Court of Appeals erred in failing to take into account affidavits which create genuine issues of material fact with regard to the care George "Leith" Hawkins received at Heck Yea Quarter Horses, LLC, in the aftermath of his stroke. Accordingly, summary judgment was improper. Because I would reverse the judgment of the circuit court as well as the judgment of the appeals court and remand the case to the circuit court for further proceedings, I respectfully dissent.
 

 ¶ 28. As the majority recognizes, "[t]he evidence must be viewed in the light most favorable to the party against whom the motion has been made."
 
 Leslie v. City of Biloxi
 
 ,
 
 758 So.2d 430
 
 , 431-32 (Miss. 2000) (quoting
 
 Miss. Dep't of Wildlife, Fisheries, & Parks v. Miss. Wildlife Enf't Officers' Ass'n, Inc.
 
 ,
 
 740 So.2d 925
 
 , 930 (Miss. 1999) ).
 

 ¶ 29. Rule 56 of the Mississippi Rules of Civil Procedure, in relevant part, provides:
 

 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 

 M.R.C.P. 56(c). Rule 801(d)(2)(A) of the Mississippi Rules of Evidence states, in relevant part: "[a] statement ... is not hearsay ..." if "[t]he statement is offered against an opposing party and ... was made by the party in an individual or representative capacity ...." Miss. R. Evid. 801(d)(2)(A).
 
 [2]
 

 ¶ 30. Both the circuit court and the Court of Appeals found that no admissible evidence created a genuine issue of material fact concerning the care given Hawkins at Heck Yea. But Goodman's affidavit contains statements allegedly made by Horn to Goodman, which were offered by Connie Hawkins in response to the opposing party's motion for summary judgment. Horn's statement is not hearsay under Mississippi Rule of Evidence 801(d)(2)(A).
 

 ¶ 31. Horn claimed in his own deposition to have sat Hawkins down in the shade, brought him a cold drink, and offered to call an ambulance. According to Horn, Hawkins refused the latter. Goodman's account is consistent in that Horn told him that he had given Hawkins "water and assistance." But Goodman, whom Horn claimed not to know, also related in his affidavit that Horn had told him that Hawkins "was in a serious medical state," that Hawkins had "passed out" and that he " 'thought he was going to die out there.' " According to Goodman, Horn continued that he " 'sure thought [Hawkins] was going to leave here today.' ... On at least two occasions, Bruce Horn stated that he knew 'Leith' was in a serious medical state and he thought he was going to die."
 

 ¶ 32. In addition to Horn's statements to Goodman, Connie Hawkins responded to Heck Yea's motion for summary judgment with an affidavit from Dr. Tiffany Scarff, in which she opined that, "had Mr. Hawkins obtained adequate medical treatment within at least 4.5 hours before he exhibited signs of significant medical distress at Heck Yea Farm, I believe he would have had a reasonable or much higher chance of survival with less injury from the stroke." Connie Hawkins also presented the affidavit from her deceased husband's friend, William "Kevin" Thompson, who stated that, "sometime near the end of the lunch hour" on June 19, 2013, he (Thompson)
 

 had been "traveling north on Interstate 55 near the Hinds/Copiah [C]ounty line." Thompson recognized Hawkins and his vehicle proceeding "in the southbound lane at approximately 10 mph." According to Thompson, "[t]raffic was backed up all around [Hawkins] and I thought at the time someone was going to get hurt." Thompson "knew something was terribly wrong with [Hawkins]."
 

 ¶ 33. Horn's statements to Goodman, Dr. Scarff's affidavit, and Thompson's affidavit create genuine issues of material fact, specifically with regard to Hawkins's ability to refuse medical care on June 19, 2013. The Mississippi Court of Appeals has held that a casino was not liable to the estate of a patron who, after having fainted and struck her head at the casino, died at home later that evening "as a result of aspirating on her own vomit."
 
 Estate of White ex rel. White v Rainbow Casino-Vicksburg P'ship, L.P.
 
 ,
 
 910 So.2d 713
 
 , 719, 714 (Miss Ct. App. 2005). The court observed that casino staff had provided first aid services and that the patron had refused their offer to summon an ambulance.
 

 Id.
 

 at 719
 
 .
 

 ¶ 34. In a case in which a patron of a V.F.W. post was assaulted and injured on the premises and V.F.W. officials refused to help because they claimed to have been " 'too tied up' " at the time, this Court observed that premises owners have an affirmative duty to aid an injured patron once the premises owners learn that the patron was injured on the premises.
 
 Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.
 
 ,
 
 519 So.2d 413
 
 , 417 (Miss. 1988) ("We are of the opinion that the V.F.W. officials had an affirmative duty to aid Mabeline once they learned she had been injured on V.F.W. premises."). Ultimately, the Court affirmed the grant of summary judgment in favor of the V.F.W. because, while the patron claimed "that the V.F.W. should have provided better lighting, hired security guards, and maintained a less violent atmosphere, [the patron] ha[d] made absolutely no showing that any of these omissions was the proximate cause of the attack."
 

 Id.
 

 ¶ 35. In
 
 White
 
 , a competent patron refused medical care.
 
 White
 
 ,
 
 910 So.2d at 715
 
 . And in
 
 Grisham
 
 , this Court observed that the V.F.W. officials had an affirmative duty to provide assistance to the patron assaulted and injured on their premises.
 
 Grisham
 
 ,
 
 519 So.2d at 417
 
 . Here, affidavits from Goodman and Dr. Scarff present genuine issues of material fact with regard to the adequacy of the care Horn purportedly provided Hawkins and whether, if Hawkins did refuse medical care, he was capable of doing so.
 

 ¶ 36. The majority finds nothing in the record to a create a genuine issue of material fact with regard to Hawkins's ability to refuse medical care. Yet Dr. Scarff said in her affidavit that Hawkins would have had a significantly higher chance of surviving had he received medical care within 4.5 hours of suffering the heat stroke. And Goodman stated that Horn had told him that he (Horn) knew that Hawkins was in a serious medical state:
 

 I called Bruce Horn and told him that George Hawkins was in the hospital in bad shape and further asked him what had happened. Bruce Horn responded, "initially, I thought he was going to die out there." He further stated, "I guess 'Leith' got too hot and passed out. We gave him some water and assistance, but I sure thought he was going to leave here today."
 

 Goodman's statement about what Horn had told him conflicted with Horn's deposition testimony that Hawkins had not passed out. Horn had provided deposition testimony that, had Hawkins passed out, he would have called an ambulance.
 

 ¶ 37. Moreover, the existence of genuine issues of material fact is even more apparent in light of Thompson's affidavit. Thompson, a friend of Hawkins's, said that he observed Hawkins driving in an apparent state of distress at ten miles-per-hour on Interstate 55 on June 19, 2013, the day of Hawkins's heat stroke. Thompson said also that "[t]raffic was backed up all around [Hawkins's vehicle] and I thought at the time someone was going to get hurt." Thompson "knew something was terribly wrong with [Hawkins]." Thompson's observations differed from Horn's deposition testimony, which emphasized Hawkins's purported lucidity. Furthermore, Thompson said that he had observed Hawkins on Interstate 55 "sometime near the end of the lunch hour," a significant departure from Horn's deposition testimony that Hawkins had left Heck Yea between 3:00 p.m. and 3:30 p.m. on June 19, 2013.
 

 ¶ 38. The majority, as did the circuit court and the appeals court, ignores the contrary testimony and, instead, accepts Horn's statements as true and lauds the treatment Horn claims to have provided Hawkins: "Horn treated Hawkins by ushering him into shade, providing him a seat, water, and an opportunity to rest. He twice offered him medical transport, and a third time offered him an alternative means to get home. Hawkins refused, said he was fine, and opted to drive himself home." Maj. Op. ¶ 24. I do not fault Horn for having provided "water and assistance" to Hawkins, and, if his version of events is worthy of belief, for offering Hawkins an ambulance or a means of transportation home. But the veracity of Horn's statement is lessened significantly by Horn's own deposition testimony that, had Hawkins passed out, he would have called an ambulance. Accordingly to Goodman, Horn told him, contrary to his (Horn's) deposition testimony, that Hawkins
 
 had
 
 passed out, that he had "thought [Hawkins] was going to die out there," and that he had thought Hawkins was "going to leave here today." The disparity in Horn's deposition testimony and in Goodman's account of what Horn told him altogether calls into question Horn's account, as does Thompson's observation of Hawkins's hazardous driving on Interstate 55 on June 19, 2013. Had the necessary medical attention been provided in a timely manner, according to Dr. Scarff's affidavit, Hawkins would have had a significantly higher chance of survival.
 

 ¶ 39. Horn's deposition testimony and what Goodman said Horn told him-and, indeed, Thompson's and Dr. Scarff's affidavits-could not be more indicative of the existence of genuine issues of material fact which should be resolved, not by this Court, but by the factfinder. I therefore decline to join my learned colleagues in the majority in affirming the decisions of the Circuit Court of the First Judicial District of Hinds County and the Mississippi Court of Appeals.
 

 WALLER, C.J., AND KING, J., JOIN THIS OPINION.
 

 The Advisory Committee Notes to Mississippi Rule of Evidence 801(d)(2) explain that the term "admissions against interest," as referenced in Connie Hawkins's papers, has been removed from the current version of the rule:
 

 Statements falling under the hearsay exclusion provided by Rule 801(d)(2) are no longer referred to as "admissions" in the title to the subdivision. The term "admissions" is confusing because not all statements covered by the exclusion are admissions in the colloquial sense-a statement can be within the exclusion even if it "admitted" nothing and was not against the party's interest when made. The term "admissions" also raises confusion in comparison with the Rule 804(b)(3) exception for declarations against interest. No change in application of the exclusion is intended.
 

 Miss. R. Evid. 801(d)(2) cmt.